UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

MISHCON DE REYA NEW YORK LLP,          :

                                     :          Civil Action No. 11-4971 (RJH) (HBP)

               Petitioner,          :

                                       :

                                       :

                  v.          :

                                       :

GRAIL SEMICONDUCTOR, INC.,          :

                                       :

               Respondent.          :

-----------------------------------------------------------x

MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION
TO CONFIRM ORDER OF ATTACHMENT IN AID OF ARBITRATION
PURSUANT TO CPLR § 6211(b)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………..ii

PROCEDURAL BACKGROUND ........................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

    A.    Grail's Engagement Of Mishcon As Counsel ................................... 2

    B.    Mishcon Worked With Grail To Obtain Financing For The NDA Action And Unsuccessfully Attempted Settlement Negotiations To Remain As Counsel ................................................................................ 4

    C.    The Nature Of The Dispute ................................................................. 5

    D.    The Parties Agreed To Arbitrate This Dispute. ............................... 7

    E.    Absent An Order Of Attachment, Any Award Issued In The Arbitration Will Be Rendered Ineffective. ........................................ 8

ARGUMENT ........................................................................................................ 8

    A.    Petitioner Has Established The Grounds For An Attachment Under CPLR §§ 7502 And 6212(a) And The Need For Continuing The Levy ........................................................................................................... 9

        1.    The Arbitration Is A Cause Of Action For Purposes of CPLR §§ 7502(c) and 6212(a). ........................................................ 10

        2.    Petitioner Has Shown A Probability Of Success On The Merits. ................................................................................................ 10

        3.    The Amount Demanded From Respondent Exceeds All Just Counterclaims Known To Petitioner. ................................... 11

        4.    Respondent's Intention To Transfer Its Sole Asset To A New Entity Demonstrates The Need To Confirm The Order To Ensure Any Arbitral Award Will Not Be Rendered Ineffectual. ................................................................................ 12

    B.    The '552 Patent May Be Attached Under New York Law ............. 13

CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Adams Apple Distrib. Co. v. Papeleras Reunidas, S.A.,
   773 F.2d 925 (7th Cir. 1985) ................................................................16

Bank of China v. NBM LLC,
   192 F. Supp. 2d 183 (S.D.N.Y. 2002) .......................................................9

Bank Leumi Trust Co. of N.Y. v. Istim, Inc.,
   892 F. Supp. 478 (S.D.N.Y. 1995) ......................................................11,12

County Natwest Secs. Corp. USA v. Jesup, Josephthal & Co., Inc.,
   180 A.D.2d 468, 579 N.Y.S.2d 376 (1st Dep't. 1992) ...........................13

Deutsche Bank Sec., Inc. v. Montana Bd. of Investments,
   7 N.Y.3d 65 (2006) ...............................................................................14

Ebsary Gypsum Co., Inc. v. Ruby,
   256 N.Y. 406 (1931) .............................................................................14

Farr & Co., v. CIA. Intercontinental De Navegacion De Cuba, S.A.,
   243 F.2d 342 (2d Cir. 1957) ..................................................................14

Fischbarg v. Doucet,
   9 N.Y.3d 375 (2007) .............................................................................15

Gasser Chair Company, Inc. v. Infanti Chair Mfg. Corp.,
   Nos. 88-cv-3931, 03-cv-6413, 2006 WL 61627 (E.D.N.Y. Mar. 6, 2006)..............16

Habitations Ltd. Inc. v. BKL Realty Sales Corp.,
   160 A.D.2d 423, 554 N.Y.S.2d 117 (1st Dep't. 1990) ...........................13

Hedman Gibson & Costigan, P.C. v. Tri-Tech Sys. Int'l, Inc.,
   92-cv-2757, 1994 U.S. Dist. LEXIS 376 (S.D.N.Y. Jan. 14, 1994) .........14

Hotel 71 Mezz Lender LLC v. Falor,
   14 N.Y.3d 303, 900 N.Y.S.2d 698 (2010) ...........................................14, 17

In re Engage, Inc.,
   544 F.3d 50 (1st Cir. 2008) ..................................................................16

In re Riordan Fabrics Co., Inc.,
   197 Misc. 581, 96 N.Y.S.2d 134 (N.Y. Sup. Ct. 1950) ..........................14

In re Thornton & Naumes LLP,
    36 A.D.3d 1119, 829 N.Y.S.2d 248 (3d Dep't 2007) ............................................10

Ind. Film Dist., Ltd. v. Chesapeake Ind.,
    148 F. Supp. 611 (S.D.N.Y. 1957) ....................................................................14

Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,
    15 N.Y.2d 443 (1965) .......................................................................................15

McClaskey v. Harbison-Walker Refractories Co.,
    138 F.2d 493 (3d Cir. 1943)...............................................................................15

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos,
    553 F.2d 842 (2d Cir. 1977)...............................................................................14

Ocean Warehousing, B.V. v. Baron Metals & Alloys, Inc.,
    157 F. Supp. 2d 245 (S.D.N.Y. 2001)..................................................................9

Platt & Munk Co. v. Republic Graphics, Inc.,
    315 F.2d 847 (2d Cir. 1963)...............................................................................15

Sivault Sys., Inc. v. Wondernet, Ltd.,
    No. 05 Civ. 0890, 2005 U.S. Dist. LEXIS 4635 (S.D.N.Y. Mar. 28, 2005)..................9, 11, 12

Swift Splash Ltd. v Rice Corp.,
    No. 10 Civ. 6448, 2010 U.S. Dist. LEXIS 101324 (S.D.N.Y. Sept. 27, 2010) ................10, 13

Victory Bottle Capping Machine Co., Inc. v. O. & J. Machine Co.,
    280 F. 753 (1st Cir. 1922)..................................................................................15

**STATUTES**

35 U.S.C. § 261..................................................................................................16

C.P.L.R. §§ 6201, 6212, 6223...............................................................................9

CPLR Article 62 ................................................................................................16

CPLR § 302(a)(1) ..............................................................................................14

CPLR § 5201......................................................................................................16

CPLR § 5201(b)..................................................................................................16

CPLR § 6201......................................................................................................9

CPLR § 6201 (1) and (3) ....................................................................................10

CPLR § 6202 .................................................................................................................16

CPLR §§ 6211(a) and 7502(c) ("Petition") .......................................................................1

CPLR § 6212(a) .......................................................................................................10, 11

CPLR §§ 6212(a), 7502(c) .........................................................................................9, 10

**CPLR §§ 7502** ...............................................................................................................9

CPLR § 7502(c) ....................................................................................................... passim

**CPLR §§ 7502(c) and 6212(a)** ....................................................................................10

Petition ..................................................................................................................1, 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 64(a) .........................................................................................................8

Rule 64 of the Federal Rules of Civil Procedure ........................................................1, 8

Rule 64(b) .........................................................................................................................8

Petitioner Mishcon de Reya New York LLP ("Mishcon"), appearing pro se, respectfully submits this Memorandum of Law, along with the Declaration of James J. McGuire, Esq., dated July 28, 2011, ("McGuire Decl.") and the exhibits annexed thereto, in support of its motion to confirm an Order of Attachment in Aid of Arbitration ("Motion"), pursuant to New York Civil Practice Law and Rules ("CPLR") § 6211(b), seeking this Court's confirmation of its Order of Attachment, dated July 20, 2011, ("Order") in aid of Mishcon's arbitration against Respondent Grail Semiconductor, Inc. ("Grail"). The Order authorized the attachment of Grail's United States patent bearing number 6,642,552 ("'552 Patent") in aid of an arbitration pursuant to CPLR § 7502(c). Pursuant to the Order, the Court directed that Mishcon move to confirm the Order within five (5) days after levy on Grail. As demonstrated herein, the attachment of the '552 Patent is required to preserve the efficacy of the award that Mishcon seeks in its arbitration against Grail pending in New York, New York and, we submit, should be confirmed.

## PROCEDURAL BACKGROUND

Mishcon is currently participating in arbitral proceedings in New York, New York concerning a fee dispute against Grail ("Arbitration"). In the Arbitration, Mishcon seeks, inter alia, compensatory damages in the sum of $2,041,410.64, with interest thereon in the amount of $73,148.72. See McGuire Decl. Ex. 1 ("Filardo Decl.")[1] at ¶33. On July 20, 2011, Mishcon filed its Petition for an Ex Parte Order of Attachment in Aid of Arbitration pursuant to Rule 64 of the Federal Rules of Civil Procedure and CPLR §§ 6211(a) and 7502(c) ("Petition"). See McGuire Decl. at ¶ 5. This Court issued the Order the same day, attaching the '552 Patent and securing thereby the amount of $2,114,559.36. Id. at ¶ 7. Mishcon served Grail with a copy of the Petition, Order, and supporting papers via overnight courier on July 22, 2011. Id. at ¶ 8. On July 26, 2011, pursuant to the Order, Mishcon directed the United States Marshal for the

---

[1] For ease of reference, all citation to McGuire Decl. Ex. 1 will hereinafter be directly cited to the Filardo Decl.

Southern District of New York to levy upon the '552 Patent by serving a certified copy of the Order upon Grail.  See McGuire Decl. at ¶ 9.

## FACTUAL BACKGROUND

In or about July and August 2010, Grail sought Mishcon's legal services in connection with Grail Semiconductor, Inc., et al. v. Mitsubishi Electronic Corporation, et al., Santa Clara Superior Court, Case No. 1-07-CV-098590 ("NDA Action") and related matters.  The NDA Action concerned Grail's claim that Defendant Mitsubishi Electric and Electronics USA Inc.'s ("MEEUSA"), among other Mitsubishi-related entities, had breached a "Proprietary Information, Invention and Non-Disclosure Agreement for Potential Investors," dated April 19, 2001, ("NDA") by improperly disclosing and using information, technology, and trade secrets related to Grail's design for a new solid-state semiconductor memory chip.[2]  See Filardo Decl. at ¶ 6. Grail commenced the NDA Action on or about June 15, 2007.  Id. at ¶ 7.  On or about November 9, 2009, after several amendments and demurrers, Grail filed its Fifth Amended Complaint ("5AC").  Id.  The 5AC asserted claims for breach of contract, injunctive relief, declaratory judgment, and constructive trust and sought damages in an amount to be determined at trial but believed by Grail to be well in excess of $100 million.  Id.

### A.   Grail's Engagement Of Mishcon As Counsel

On or about August 25, 2010, Mishcon and Grail entered into an Engagement Agreement ("Advisory Engagement Agreement").  See Filardo Decl. at Ex. C.  The Advisory Engagement Agreement concerned Mishcon's initial work, specifically an analysis of the NDA Action and preparation of a memorandum regarding Mishcon's suggested strategy therein and advice on

---

[2] On November 4, 2003, the United States Patent and Trademark Office issued the '552 Patent for the chip to Donald Stern, one of Grail's shareholders, who subsequently transferred the '552 Patent to Grail.  Filardo Decl. at Ex. A.

potential related actions. Id. at ¶ 8. Prior to its execution, Grail informed Mishcon that it had sufficient funds to pay Mishcon's fees. Id. at ¶ 9.

In accordance with the Advisory Engagement Agreement, Mishcon dedicated significant effort and resources to timely perform the requisite legal services agreed to therein. Id. at ¶ 10. Thereafter, on September 23, 2010, Mishcon sent Grail an invoice concerning this initial work in the amount of $48,346.50 ("September Invoice"). Id. Grail did not object to the charges in the September Invoice. See Filardo Decl. at ¶ 11. However, Grail informed Mishcon -- despite its prior representations to the contrary -- that it did not then, but soon would have, the funds to remit payment for the September Invoice. Id.

In or about September 2010, Grail notified Mishcon that it desired to retain it to represent Grail in the NDA Action.[3] Id. at ¶ 12. Grail further advised Mishcon that it was very close to closing on a funding deal that would enable it to pay the September Invoice and the Firm's fees and disbursements going forward in the NDA Action. Id. Accordingly, on September 21, 2010, Grail executed a second Engagement Agreement with Mishcon concerning the NDA Action ("Engagement Agreement"). See Filardo Decl. at Ex. D.

Reasonably relying upon Grail's repeated assurances that it would be closing on a funding deal, Mishcon continued to perform work on Grail's behalf and incur fees and expenses in obtaining from Grail's former counsel in the NDA Action the case file of then more than three (3) years of litigation, reviewed the same, and become intimately acquainted with the NDA Action's lengthy and complicated history. Id. at ¶ 14.

---

[3] With Grail's approval and direction, Mishcon identified Bergeson, LLP ("Bergeson"), a respected and skilled California firm, to serve as local counsel to Grail. Bergeson withdrew as local counsel on January 12, 2011, because Grail did not pay its invoices. Consequently, Grail obtained new California local counsel, Grellas & Associates ("Grellas"), which entered its appearance on February 4, 2011.

**B.** **Mishcon Worked With Grail To Obtain Financing For The NDA Action And Unsuccessfully Attempted Settlement Negotiations To Remain As Counsel**

Mishcon also worked with Grail -- upon its request -- to locate interested litigation finance companies to fund the NDA Action for Grail, and, at Grail's direction, provided the interested companies with necessary procedural information related to the case. The efforts to secure litigation funding for the NDA Action were ultimately unsuccessful. See Filardo Decl. at ¶ 19. During that time, Mishcon continued to perform significant legal work on behalf of Grail that rendered favorable results to it and incur further fees and disbursements in connection with the NDA Action. Id.

On or about May 13, 2011, Grail retained counsel to negotiate a settlement with Mishcon in connection with its delinquent unpaid invoices. Id. at ¶ 23. Counsel advised Mishcon that Grail had no issue with the time that Mishcon had billed on the NDA Action (except for certain time billed by a now-former Mishcon attorney) and asked that Mishcon refrain from withdrawing and commencing action against Grail so as to provide it time to obtain funding for Grail and the NDA Action. Id. Shortly thereafter, Grail advised Mishcon that it was obtaining funding from a "patent troll" concern and stated its implied intent to transfer the '552 Patent -- Grail's sole asset -- to a new entity owned jointly with the funder. See Filardo Decl. at ¶ 24. Although that deal fell through, on or about June 16, 2011, Grail advised Mishcon that it was meeting with another "patent troll" concern that could need as few as seven (7) weeks to conduct its due diligence and close a funding deal. Id. at ¶¶ 24-25.

Mishcon believes that Grail plans to transfer the '552 Patent to another entity as soon as it obtains an appropriate funder, which may be as early as late July or August 2011. Id. at ¶ 26. Given Grail's intention, Mishcon asked Grail's counsel to confirm that Grail was not assigning or otherwise transferring the '552 Patent to another entity. Id. at ¶ 27. Tellingly, while

addressing other issues contemporaneously raised by Mishcon, Grail's counsel deliberately did not respond to this inquiry.  Id.  Given Grail's financial condition, if this occurs, Mishcon will have no way of enforcing any award to which it may be entitled in the pending Arbitration.

Thereafter, working with Grail and its counsel, Mishcon employed its best efforts to create an arrangement by which it could remain as counsel of record in the NDA Action, despite Grail's absolute failure to fully retire any of its outstanding invoices during the previous ten (10) months.  See Filardo Decl. at ¶ 28.  Grail rejected nearly all of Mishcon's proposed terms, including refusing to provide Mishcon with a security interest in the '552 Patent necessary to secure its past and, if it were to remain as counsel in the NDA Action, future fees.  Id. at ¶ 29.  Finally, after weeks of negotiations, on or about July 5, 2011, Grail notified Mishcon that it should file a "Stipulation and [Proposed] Order Regarding Withdrawal of Counsel" ("Stipulation") previously agreed upon by the parties, and that their attorney-client relationship was terminated.  Id. at ¶ 30.  On July 5, 2011, Mishcon filed the Stipulation.  On or about July 6, 2011, the Santa Clara Court so-ordered the Stipulation.  Id. at ¶ 31.

### C.    The Nature Of The Dispute

Mishcon diligently represented Grail in the NDA Action.  At the outset, Mishcon was required to review, analyze, and advise Grail with respect to voluminous materials and documents arising out of the three (3) years of trial and appellate litigation that preceded Mishcon's involvement in the NDA Action.  See Filardo Decl. at ¶ 14.  Thereafter, the legal services Mishcon provided in connection with the NDA Action included, but were far from limited to, advising and representing Grail in multiple appellate matters, responding further to extant discovery requests, drafting Grail's code compliant trade secret statement, propounding voluminous discovery requests and successfully litigating related motions to compel, opposing

demurrer and summary judgment motions, filing multiple motions to seal so as to protect Grail's confidential information -- all of which were granted -- and drafting, reviewing, and responding to extensive correspondence with opposing counsel, third parties, and the Court. Id. at ¶ 15.

In accordance with the Advisory Engagement Agreement and Engagement Agreement (together, "Engagement Agreements"), Mishcon sent Grail monthly invoices reflecting the reasonable fees and costs it incurred on Respondent's behalf. Id. at ¶ 20. Pursuant to the Engagement Agreements, the parties agreed that:

> [S]tatements will be submitted monthly (every 30 days) and are due and payable upon receipt. Grail agrees to notify us promptly in writing, if it disputes any entry for legal services or charges on any statement. In the absence of any written objection thereto within thirty (30) days of Grail's receipt of an invoice, Grail will be deemed to have accepted and acknowledged the invoice as correct through the period covered by the invoice.

See Filardo Decl. Exs. C, D at p. 2.

Except for certain time billed by one now-former Mishcon lawyer related to litigation funding, at no time did Grail object to any invoice, dispute the quality of Mishcon's work, or the amount of time expended by Mishcon's lawyers on the NDA Action. See Filardo Decl. at ¶ 21. Indeed, Grail demanded that Mishcon continue working on the NDA Action without paying its invoices and repeatedly promised and assured Mishcon that payment was forthcoming. Id. Acting in good faith and relying to its detriment on Grail's promise to pay, Mishcon continued to work diligently on the NDA Action until its withdrawal and termination as counsel of record in the action. Id. at ¶ 16. Grail has yet to fully retire any of its legal bills, which now total $2,041,410.64 in fees and disbursements.[4] Id.

---

[4] On or about May 24, 2011, Grail requested that Mishcon analyze certain pending appellate issues and paid Mishcon an agreed amount of $10,000 for that discrete assignment.

**D.**     **The Parties Agreed To Arbitrate This Dispute.**

Pursuant to the Engagement Agreements,[5] the parties agreed as follows:

10.     _Arbitration_.  Any dispute between us concerning our fees or charges shall be submitted to arbitration under Part 137 of the rules of the Chief Administrator of the New York Courts, and shall be binding if (i) the amount in question is $50,000 or less; or (ii) each of us so agrees, or (iii) such arbitration becomes binding under such rules...Any dispute between us concerning our fees or charges not so submitted to binding arbitration under Part 137, or that remains unresolved after non-binding arbitration under such rules, and any other dispute between or among you and us or any of our attorneys and agents, including but not limited to claims of malpractice, errors or omissions, or any other claim of any kind regardless of the facts or the legal theories, shall be finally settled by mandatory binding arbitration in New York, New York conducted in accordance with the Commercial Rules of the American Arbitration Association, with each party to bear its own costs and attorneys' fees and disbursements.  Such arbitration shall be conducted before a single arbitrator, except in matters involving a dispute greater than five hundred thousand dollars, which shall be conducted before a three arbitrator panel with each side selecting one arbitrator and the two arbitrators selected by the parties choosing the third arbitrator.  Judgment on a binding arbitration award may be entered in any court of competent jurisdiction. _We mutually acknowledge that, by this agreement to arbitrate, each of us irrevocably waives our rights to court or jury trial._

See Filardo Decl. Ex. D at p. 5.

Accordingly, Mishcon commenced this fee dispute under the AAA's Commercial

Arbitration Rules and Mediation Procedures seeking: (i) a Declaration that Respondent has

breached its obligations under the Engagement Agreements, breached the implied covenant of

good faith and fair dealing, was unjustly enriched by its failure to compensate Mishcon for legal

services, and that Respondent's assurances to pay and failure to timely object to Mishcon's

invoices constitutes an account stated; (ii) compensatory damages in the sum of $2,041,410.64;

(iii) pre-Judgment interest at the New York statutory rate of nine (9) percent in the approximate

amount of $73,148.72; (iv) post-Judgment interest at the New York statutory rate of nine (9)

percent; and (v) all other and further relief to which it is entitled.  Id. at ¶ 33

---

[5] Paragraph 10 of the Engagement Agreement contains nearly identical language as Paragraph 9 of the Advisory Engagement Agreement.

**E.    Absent An Order Of Attachment, Any Award Issued
In The Arbitration Will Be Rendered Ineffective.**

Grail is effectively insolvent and conducts no business other than prosecuting the NDA

Action.  See Filardo Decl. at ¶ 35.  It has a history of failing to pay its creditors.  For example, its

prior counsel in the NDA Action, Todd, Ferentz, Schwarcz and Rimberg LLP, filed a lien

thereon to recover its unpaid attorneys' fees in an amount believed to be in excess of $2,300,000.

Id. Ex. E at Docket No. 0381-000.  The Bergeson law firm also withdrew as California local

counsel in the NDA Action owing to Grail's failure to pay its outstanding invoices.  Id. at ¶ 36.

Furthermore, Mishcon believes that Grail has failed to pay its current California local counsel,

the Grellas law firm, its past invoices in full.  Id.

Given Respondent's past and current record of failing to pay its creditors, its current

insolvency, and the fact that it may transfer its sole asset to a new entity -- which will leave

Mishcon with no possibility of enforcing any award against Grail to which it may be entitled in

the pending Arbitration -- Mishcon seeks to confirm the Order attaching the '552 Patent so that

any award to which Petitioner may be entitled can and will be effectuated.

## ARGUMENT

Pursuant to Rule 64 of the Federal Rules of Civil Procedure, "[a]t the commencement of

and throughout an action, every remedy is available that, under the law of the state where the

court is located, provides for seizing a person or property to secure satisfaction of the potential

judgment.  But a federal statute governs to the extent it applies."  Fed. R. Civ. P. 64(a).  Rule

64(b) specifically applies to Orders of Attachment and incorporates New York law concerning

applications for an attachment in aid of arbitration and subsequent proceedings in regard thereto.

See, e.g., Sivault Sys., Inc. v. Wondernet, Ltd., No. 05 Civ. 0890, 2005 U.S. Dist. LEXIS 4635,

*7 (S.D.N.Y. Mar. 28, 2005) (applying New York CPLR in an attachment proceeding); Bank of

China v. NBM LLC, 192 F. Supp. 2d 183, 186 (S.D.N.Y. 2002) ("Pursuant to Fed. R. Civ. P. 64, the remedy of attachment is governed by state law.").

"To confirm an order of attachment . . . under New York law, a plaintiff bears the burden of establishing the grounds for the attachment, the need for continuing the levy, and the probability of success on the merits." Id.; see also Ocean Warehousing, B.V. v. Baron Metals & Alloys, Inc., 157 F. Supp. 2d 245, 247-248 (S.D.N.Y. 2001) (granting plaintiff's motion to confirm ex parte order of attachment); C.P.L.R. §§ 6201, 6212, 6223.

### A.    Petitioner Has Established The Grounds For An Attachment Under CPLR §§ 7502 And 6212(a) And The Need For Continuing The Levy

CPLR § 7502(c) allows for prejudgment attachment in aid of arbitration and, in pertinent part, provides as follows:

> Provisional remedies.  The supreme court in the county in which arbitration is pending or in a county specified in subdivision (a) of this section, may entertain an application for an order of attachment of for a preliminary injunction in connection with an arbitration that is pending or that is to be commenced inside or outside this state, whether or not it is subject to the United Nations convention on the recognition and enforcement of foreign arbitral award, but on the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief.  The provisions of articles 62 and 63 of this chapter shall apply to the application, including those relating to undertakings and to the time for commencement of an action (arbitration shall be deemed an action for this purpose), except that the sole ground for the granting of the remedy shall be as stated above.

CPLR § 7502(c).

A request for an Order of Attachment in aid of arbitration in this Court requires the petitioner to show that: (i) "there is a cause of action;" (ii) "it is probable that the plaintiff will succeed on the merits;" (iii) "the amount demanded from the defendant exceeds all counterclaims known to the plaintiff;" and (iv) "the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." See CPLR §§ 6212(a), 7502(c); see also Swift Splash Ltd. v Rice Corp., No. 10 Civ. 6448, 2010 U.S. Dist. LEXIS 101324, at *5

(S.D.N.Y. Sept. 27, 2010) (same); In re Thornton & Naumes LLP, 36 A.D.3d 1119, 1120, 829
N.Y.S.2d 248, 249 (3d Dep't 2007) (same).  Mishcon meets each of these requirements, and
therefore this Court should confirm the Order.[6]

### 1.   The Arbitration Is A Cause Of Action For Purposes of CPLR §§ 7502(c) and 6212(a).

Mishcon commenced the Arbitration by filing a copy of the Demand for Arbitration
("Demand") and Arbitration Agreement with the AAA on July 15, 2011.  Mishcon served the
original Demand on Grail on July 15, 2011.  Therefore, in accordance with CPLR §§ 6212(a)
and 7502(c), there exists a cause of action.  See CPLR § 7502(c) ("The provisions of articles 62
and 63 of this chapter shall apply to the application, including those relating to undertakings and
to the time for commencement of an action (arbitration shall be deemed an action for this
purpose)").

### 2.   Petitioner Has Shown A Probability Of Success On The Merits.

Mishcon has met its burden of showing that it is probable it will succeed on the merits in
the Arbitration.  "As to the . . . requirement[] . . . that the movant is likely to succeed on the
merits, the court must give the plaintiff the benefit of all the legitimate inferences that can be
drawn from the facts."  Bank Leumi Trust Co. of N.Y. v. Istim, Inc., 892 F. Supp. 478, 482
(S.D.N.Y. 1995) (internal quotations and citations omitted).  As discussed above, Mishcon
provided legal services to Grail during the course of a ten (10) month period.  As contemplated
in the Engagement Agreements, Mishcon billed Grail on a monthly basis.  See Filardo Decl. Ex.
D at p. 2.  Grail did not object to the fees and disbursements billed in connection with the NDA
Action within the thirty (30) day period provided in the agreements.  Id. at ¶ 20, Ex. D at p. 2.

---

[6]  In addition, Mishcon also meets the requirements of CPLR § 6201, because Grail "is a nondomiciliary residing
without the state" and as demonstrated in Section B, supra, Grail intends to defraud its creditors or frustrate the
enforcement of a Judgment that might be rendered in Mishcon's favor by assigning the '552 Patent to a new
company created for the purpose of receiving and holding that patent.  See CPLR § 6201 (1) and (3).

Indeed, Grail only ever objected to certain fees of one former Mishcon attorney, and those fees have been drastically discounted at Grail's request.  Id.  Moreover, Grail has routinely stated that it was happy with Mishcon's performance, and, in fact, Mishcon prevailed on numerous significant motions in the NDA Action.  Id. at ¶ 21  Under the plain language of the Engagement Agreements, Mishcon is entitled to the relief it seeks in the pending Arbitration.  See Filardo Decl. Ex. D at p. 2.  The only issue is the *amount* of the award, *not if* there will be an award issued to Mishcon.

Furthermore, even in the absence of such a strong showing of success on the merits, Courts have recognized that, in the arbitration context, "[s]ucess on the merits in arbitration . . . cannot be predicted with the confidence a court would have in predicting the merits of a dispute awaiting litigation in court," and therefore "this element of the analysis will naturally have greatly reduced influence."  See Sivault, 2005 U.S. Dist. LEXIS 4635, at *11 (granting petition for Order of Attachment, where "[t]here [was] relatively little in the record to demonstrate the likelihood that [petitioner] will succeed on the merits of its claim . . .") (citations omitted).  Here, Mishcon has more than met its obligation under CPLR § 6212(a) the probability of its ultimate success on the merits of the Arbitration.

### 3.     The Amount Demanded From Respondent Exceeds All Just Counterclaims Known To Petitioner.

To be entitled to an Order of Attachment Mishcon must also show that the amount it seeks from Grail exceeds all known counterclaims.  See CPLR § 6212(a).  In considering this requirement, "courts are to examine only the amount of the counterclaims *that the plaintiff concedes are just*."  Bank Leumi Trust Co. of N.Y., 892 F. Supp. at 482 (emphasis in original).  Mishcon's claims against Grail seek an award in excess of $2,041,410.64.  See Filardo Decl. at ¶ 33.  While Grail may dispute the total amount of fees and disbursements owed to Mishcon, Grail

cannot assert any viable counterclaims against Mishcon, especially in light of the fact that *it has not paid any* of the past fees owed to Mishcon (save one $10,000 payment). Id. at ¶¶ 16, 22. Moreover, since the Demand has only recently been served upon Grail, it has not made any formal counterclaims, and therefore "the amount demanded from the defendant exceeds all counterclaims *known* to the plaintiff." See CPLR § 6212(a) (emphasis added); see also Sivault, 2005 U.S. Dist. LEXIS 4635, at *14 (CPLR § 6212(a) satisfied "[i]n view of the acknowledgement that no counterclaims have yet been filed in the underlying arbitration."). Without doubt, Mishcon's claims against Grail far exceed all known counterclaims that Grail could assert in good faith during the Arbitration.

### 4.   Respondent's Intention To Transfer Its Sole Asset To A New Entity Demonstrates The Need To Confirm The Order To Ensure Any Arbitral Award Will Not Be Rendered Ineffectual.

Mishcon must additionally demonstrate that "the award to which [it] may be entitled may be rendered ineffectual without such provisional relief." See CPLR § 7502(c).  A petitioner meets this obligation where it "demonstrate[s] the possibility, if not the likelihood, that absent the attachment being requested, the ultimate arbitration award would be severely compromised." See County Natwest Secs. Corp. USA v. Jesup, Josephthal & Co., Inc., 180 A.D.2d 468, 469, 579 N.Y.S.2d 376, 376-77 (1st Dep't. 1992) (granting Order of Attachment in light of possibility of compromise of later-issued award.).

Factors weighing in favor of granting an Order of Attachment include but are not limited to: (i) whether the respondent "has historically failed to pay creditors," see Habitations Ltd. Inc. v. BKL Realty Sales Corp., 160 A.D.2d 423, 424, 554 N.Y.S.2d 117, 118 (1st Dep't. 1990); and (ii) whether respondent is at risk of not meeting its current obligations, see Swift Splash Ltd., 2010 U.S. Dist. LEXIS 101324, at *7.

Mishcon's application easily satisfies this requirement.  First, Grail has stated its intent to transfer the '552 Patent -- its sole asset -- to a new entity (Grail's Chief Executive Officer, Ronald Hofer's so-called "NewCo"), and it is likely that Grail will do so when it obtains funding through a "patent troll" company with whom it is presently negotiating.  See Filardo Decl. at ¶ 22.  Indeed, Mishcon believes that Grail might be closing on a funding deal in late July or early August 2011.  Id. at ¶ 26.  Second, Grail is insolvent, and owes multiple law firms their outstanding fees and disbursements.  Consequently, if Grail is allowed to transfer or assign the '552 Patent to a NewCo, Mishcon will be unable to locate sufficient other Grail assets to satisfy any award to which it may be entitled.  Id. at ¶¶ 35-38.  An attachment of the '552 Patent is the only way to ensure that any award to which Mishcon may be entitled will not be rendered ineffectual, and so, we submit, the Motion should be granted.

**B.    The '552 Patent May Be Attached Under New York Law.**

As the New York Court of Appeals has found, "a court with personal jurisdiction over a nondomiciliary present in New York has jurisdiction over that individual's tangible or intangible property, even if the situs of the property is outside New York."[7]  Hotel 71 Mezz Lender LLC v. Falor, 14 N.Y.3d 303, 312, 900 N.Y.S.2d 698, 704 (2010) (affirming Supreme Court's pre-Judgment attachment of intangible property owned or controlled by nondomiciliary guarantor).

This Court has personal jurisdiction over Grail, because "by agreeing to arbitrate in New York a party makes himself as amenable to suit as if he were physically present in New York."  See Farr & Co., v. CIA. Intercontinental De Navegacion De Cuba, S.A., 243 F.2d 342, 347 (2d

---

[7]  Under New York law, a patent is located where its owner is domiciled.  See Ebsary Gypsum Co., Inc. v. Ruby, 256 N.Y. 406, 409-10 (1931); see also Hedman Gibson & Costigan, P.C. v. Tri-Tech Sys. Int'l, Inc., 92-cv-2757, 1994 U.S. Dist. LEXIS 376, at *10 (S.D.N.Y. Jan. 14, 1994) ("Court may properly exercise jurisdiction over patents in the domicile of their owner"); cf. Ind. Film Dist., Ltd. v. Chesapeake Ind., 148 F. Supp. 611, 614 (S.D.N.Y. 1957) ("[C]opyright is an intangible, incorporeal right in the nature of a privilege or franchise which does not have a situs apart from the domicile of the owner.")(rev'd on unrelated grounds).  Grail is a California corporation with its business address in Florida.  See Filardo Decl. Ex. B.  Accordingly, the '552 Patent is located outside of New York State.

Cir. 1957); Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos, 553 F.2d 842, 844 (2d Cir. 1977) ("By agreeing to arbitrate in New York, . . . the [Respondent] must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in New York.") (citations omitted); In re Riordan Fabrics Co., Inc., 197 Misc. 581, 586, 96 N.Y.S.2d 134, 139 (N.Y. Sup. Ct. 1950) ("[W]hen parties agree to arbitrate in a named jurisdiction they in fact undertake to submit themselves to any procedures in that jurisdiction necessary to bring the arbitration to an effective conclusion.").

Moreover, personal jurisdiction exists over Grail pursuant to CPLR § 302(a)(1), because Grail transacted business within the state from which Petitioner's cause of action arises. See Deutsche Bank Sec., Inc. v. Montana Bd. of Investments, 7 N.Y.3d 65, 71 (2006) (Under CPLR § 302(a)(1), a "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."). Grail contacted Mishcon in New York to retain it and then routinely communicated with and gave instruction to Mishcon attorneys through extensive telephone and electronic communications over a more than ten (10) month period. See Filardo Decl. at ¶ 17; see also, Fischbarg v. Doucet, 9 N.Y.3d 375, 505-06 (2007) (party projects itself into New York by contacting New York attorney to solicit services and subsequently establishing attorney-client relationship through "direct participation in that relationship via calls, faxes and emails"). The legal services rendered by Mishcon at Grail's direction over this period were performed almost exclusively in New York. Id. at ¶ 18; see Fischbarg, 9 N.Y.3d at 507 (by utilizing legal services performed in New York person invokes benefits and protections of New York law relating to attorney-client relationship). Additionally, Bob Stern, a Grail shareholder and its former Chief

Executive Officer, traveled to New York on at least one occasion to discuss matters pertaining to Mishcon's representation.  Id. at ¶ 19; see Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 455-56 (1965) (finding personal jurisdiction over corporation that, among other things, sent officers and employees to New York to discuss issues concerning the subject contract).

Furthermore, the '552 Patent is property properly subject to attachment.  See Platt & Munk Co. v. Republic Graphics, Inc., 315 F.2d 847, 853 (2d Cir. 1963) ("'[T]he provisions of the patent and copyright acts, securing a sole and exclusive right to the patentee, do not exonerate the right and property thereby acquired by him…from liability to be subjected by suitable judicial proceedings to the payment of his debts.'") (quoting Ager v. Murray, 105 U.S. 126, 128 (1881)); see also Victory Bottle Capping Machine Co., Inc. v. O. & J. Machine Co., 280 F. 753, 761 (1st Cir. 1922) ("patents may be ordered into the custody of the clerk of court to await the trial of the question of damages."); McClaskey v. Harbison-Walker Refractories Co., 138 F.2d 493, 499-500 (3d Cir. 1943) (U.S. patent seized on writ of fieri facias issued under Pennsylvania law assignable to purchaser at sheriff's sale); Adams Apple Distrib. Co. v. Papeleras Reunidas, S.A., 773 F.2d 925, 931 (7th Cir. 1985) ("[W]e find no authority for the proposition that an equitable lien may not be imposed on a business's trademark alone.").

Indeed, the reach of legal collection remedies, attachment or otherwise, is sufficiently expansive to include a debtor's intangible assets such as a patent.  By the express terms of CPLR § 7502(c), the strictures of CPLR § 6202 (which define that debt or property subject to attachment) apply here to an application for attachment in aid of arbitration.  Under CPLR § 6202, any property against which a money Judgment may be enforced (as provided in CPLR § 5201) is subject to attachment, which includes "any property which could be assigned or

transferred." See CPLR § 5201(b). Thus, because a patent is assignable and/or transferrable, it is subject to attachment under CPLR Article 62. See 35 U.S.C. § 261 ("Applications for patents, patents, or any interest therein, shall be assignable in law by an instrument in writing."); see also In re Engage, Inc., 544 F.3d 50, 54 (1st Cir. 2008) ("A favorable decision by the Patent Office thus provides the applicant with a property interest-to exclude others from use of the property-which may itself be sold . . . . This property interest, even at the stage of an application, is freely assignable."). Indeed, a patent has similarly been deemed to be property under other provisions of the CPLR. See, e.g., Gasser Chair Company, Inc. v. Infanti Chair Mfg. Corp., Nos. 88-cv-3931, 03-cv-6413, 2006 WL 61627, at *4 (E.D.N.Y. Mar. 6, 2006) (patent constitutes property subject to Turnover Order under CPLR § 5225(a) and sale by receiver in lieu of execution sale by sheriff under CPLR § 5228).

As discussed in detail above, see supra pp. 2-3, Grail entered into the Engagement Agreements with Mishcon, both of which contained arbitration provisions whereby the parties agreed to arbitrate any dispute concerning Mishcon's fees in New York, New York. Having submitted itself to jurisdiction in New York City, this Court has personal jurisdiction over Grail and may order an attachment of its tangible or intangible property, including the '552 Patent, located outside New York. See Hotel 71 Mezz Lender LLC, 14 N.Y.3d at 312, 900 N.Y.S.2d at 704 (Court with personal jurisdiction over nondomiciliary present in New York possesses jurisdiction over tangible and intangible property of said nondomiciliary, even if situs of property falls outside New York).

## CONCLUSION

For the reasons set forth herein, Petitioner respectfully requests that this Court grant its motion to confirm the Order and grant such other relief as the Court deems warranted.

Dated: New York, New York
      July 28, 2011

                Respectfully submitted,

                MISHCON DE REYA NEW YORK LLP

By: _____
                James J. McGuire
                Mark A. Berube
                Vincent Filardo, Jr.
                Mishcon de Reya New York LLP
                200 Park Avenue, 44th Floor
                New York, NY 10166
                Telephone (212) 612-3270
                Facsimile (212) 612-3297

                *Attorneys pro se*