## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------X
MISHCON DE REYA NEW YORK, LLP                    :
                                                 :        Civil Action No.11-4971 (JMF)
                        Petitioner,              :
        -against-                                :
                                                 :
GRAIL SEMICONDUCTOR, INC.,                       :
                                                 :
                        Respondent.              :
-----------------------------------------------------------X
```

### CORRECTED APPLICATION OF ANDREW L. REIBMAN,
### AS COURT-APPROVED RECEIVER, FOR ALLOWANCE OF HIS FEES

Andrew L. Reibman, Esq.
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
(212) 536-3900 (telephone)
(212) 536-3901 (facsimile)
Andrew.Reibman@klgates.com

## TABLE OF CONTENTS

**Page**

BACKGROUND ....................................................................................................1

    A.    Proceedings Before This Court ................................................ 1

    B.    Patent Infringement Action Pending in the Northern District of California........... 8

SUMMARY OF THE RECEIVER'S FEES ..................................................10

Voluntary Reductions Taken By the Receiver...............................................10

SUMMARY OF PROFESSIONAL SERVICES RENDERED BY PROJECT CATEGORY .....11

    A.    Analyzing the '552 Patent..................................................... 11

    B.    Retention Issues and Scope of Receivership .......................... 11

    C.    Disposition and Sale of the'552 Patent.................................. 12

    D.    S.D.N.Y. Receivership Proceedings ........................................ 13

    E.    Services Rendered in Connection with the N.D. Cal. Action ................................ 14

    F.    Discovery ............................................................................ 14

    G.    Docket Review...................................................................... 15

    H.    Preparation of Fee Application ............................................. 15

    I.    Legal Case Management....................................................... 15

    J.    Non-Working Travel............................................................. 15

BASIS FOR THE RELIEF REQUESTED ....................................................16

    A.    The Receiver's Hourly Rate is Reasonable .......................... 19

    B.    The Hours Expended by the Receiver Are Reasonable ......................... 20

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty.
Bd. of Elections,
522 F.3d 182 (2d Cir. 2008) ................................................................... 19

Diplomatic Man, Inc. v. Nike, Inc.,
No. 08 Civ. 139, 2009 WL 935674 (S.D.N.Y. Apr. 7, 2009) ................................ 19

Fed. Home Loan Mortgage Corp. v. S.E.A. Yonkers Assocs.,
869 F. Supp. 187 (S.D.N.Y. 1994) .......................................................... 17

FTC v. Consumer Health Benefits Ass'n,
No. 10 Civ. 3551, 2011 WL 5513182 (E.D.N.Y. Nov. 10, 2011) ........................... 17, 19, 20

GAKM Res. LLC v. Jaylyn Sales Inc.,
No. 08 Civ. 6030, 2009 WL 2150891 (S.D.N.Y. July 20, 2009) ........................... 19

Gaskill v. Gordon,
27 F.3d 248 (7th Cir. 1994) ................................................................. 18

Gasser v. Infanti Int'l Inc.,
358 F. Supp. 2d 176 (E.D.N.Y. 2005) ..................................................... 16

Gierlinger v. Gleason,
160 F.3d 858 (2d Cir. 1998) ................................................................. 20

Hensley v. Eckerhart,
461 U.S. 424 (1983) ........................................................................ 19

Luciano v. Olsten Corp.,
109 F.3d 111 (2d Cir. 1997) ................................................................. 20

Pearson Education, Inc. Vergara,
No. 09 Civ. 6832, 2010 WL 3744033 (S.D.N.Y. Sept. 27, 2010) ......................... 20

S.E.C. v. Byers,
590 F. Supp. 2d 637 (S.D.N.Y. 2008) ................................................. 16, 17, 19, 20

S.E.C. v. Elliott,
953 F.2d 1560 (11th Cir. 1992) ............................................................. 18

Simmons v. N.Y.C. Transit Authority,
575 F.3d 170 (2d Cir. 2009) ................................................................. 19

Yurman Designs, Inc. v. PAJ, Inc.,
    125 F. Supp. 2d 54 (S.D.N.Y. 2000) ................................................................. 20

**STATE CASES**

Land v. Esrig,
    42 N.Y.S.2d 623 (Supp. Ct. Kings Co. 1943) .........................................................17

**RULES**

New York Civil Practice Law and Rules, § 8004(a) ...................................................16

New York Civil Practice Law and Rules, § 8004(b) ...................................................16

**OTHER AUTHORITIES**

14 Weinstein, Korn & Miller, ¶ 8004.09 (2d ed. 2004)...............................................17

Andrew L. Reibman, as Court-approved receiver (the "Receiver") pursuant to this Court's Orders dated December 3, 2012, December 19, 2012, March 7, 2013, April 1, 2013, June 20, 2013 and June 25, 2013 (collectively, the "Orders"), hereby submits his application (the "Application") for approval of his fees in the amount of $93,164.75 (the "Total Fees")[1] for the period from December 3, 2012 through and including July 22, 2013 (the "Application Period"), and in support thereof submits the *Declaration of Andrew L. Reibman, Esq.,* dated July 25, 2013 (the "Reibman Decl.") filed simultaneously herewith, and respectfully states as follows:

## BACKGROUND

A.   **Proceedings Before This Court**

1.     This Court entered a judgment in favor of Petitioner Mishcon de Reya New York, LLP ("Mishcon" or the "Petitioner") and against Respondent Grail Semiconductor, Inc. ("Grail") on July 11, 2012 in the amount of $2,111,000.00 (the "Judgment") (Docket No. 48).  Reibman Decl., ¶ 2.

2.     The Court entered an Order on November 13, 2012 (the "Nov. 13, 2013 Order") (Docket No. 76) appointing Receiver and directing Grail to assign its United States Patent No. 6,642,552 (the "'552 Patent") to Receiver for sale, with the proceeds of the sale to be used to satisfy the Judgment.  Id., ¶ 3.

3.     As discussed *infra*, Grail was – at that same time – pursuing a claim for infringement of the '552 patent against semiconductor manufacturer Renesas Electronics America, Inc. ("Renesas") in the United States District Court for the Northern District of California.  Id., ¶ 4.

---

[1] The Total Fees requested already incorporate a voluntary reduction of $18,287.50, which is described in detail in this Application.

4.      Grail's patent litigation counsel Niro, Heller & Niro delivered a "Notice of Attorneys Lien" to Receiver on December 5, 2012, stating that the anticipated value of the '552 patent in the California litigation was at least One Hundred Million Dollars ($100,000,000). Id., ¶ 5.  The Niro firm repeated this representation in correspondence sent to the Receiver on January 16, 2013 and to the Receiver's counsel on May 13, 2013.  Id., ¶ 5.

5.      The Receiver agreed to serve at an hourly billable rate and did not seek a percentage share of the proceeds as a commission, despite the high value placed on the patent. Id., ¶ 6.

6.      By Order dated December 3, 2012 (the "Dec. 3, 2012 Order") (Docket No. 79), the Court appointed Andrew L. Reibman, Ph.D., Esq. at an hourly rate of $695.00, to act as Receiver for the purpose of selling the '552 Patent (the "Receivership").  Id., ¶ 7.  The Dec. 3. 2012 Order also authorized Mishcon to credit bid the amount of the Judgment (with interest from the date of the judgment) if Mishcon itself wished to take ownership of the patent.  Id., ¶ 8.  The Order further provided that "the proceeds from the sale, transfer, and/or assignment of the '552 Patent, after payment of the Receiver for necessary expenses and fees as allowed by the Court, shall be paid to Mishcon up to the amount of the Judgment plus interest at the rate of 0.20% as of July 11, 2012." Id., ¶ 8.

7.      From this point on, what should have been a straightforward assignment, sale, and distribution of proceeds became a terribly complicated exercise in addressing obstacles created by each of the parties.  Id., ¶ 9.  This Application details those complexities, which serve to explain the cost of the Receiver's work.

8.      The Receiver attempted, promptly following the Dec. 3, 2012 Order, to obtain an assignment of the entire right, title and interest in the '552 Patent from Grail, but was rebuffed.

Id., ¶ 10.  Grail instead created its own assignment and executed it, assigning only a partial interest in the '552 Patent to the Receiver. Id., ¶ 10.  Motion practice on this issue then ensued. Id., ¶ 10.

9.      On December 14, 2013, the Receiver submitted the Receiver's Report (Docket No. 87) (the "First Report") and moved to modify the Dec. 3, 2012 Order to, among other things: (i) obtain clarification on the Receiver's commissions and requesting authority to retain K&L Gates as the Receiver's counsel; (ii) obtain clarification that the Dec. 3, 2012 Order assigned all past and future rights, title, and interest that Grail had in the '552 Patent to the Receiver; (iii) direct Grail to provide certain previously requested information to the Receiver; (iv) authorize the Receiver to appear and be heard in the N.D. Cal. Action (defined below); and (v) extend the deadlines for the Receiver to sell the '552 Patent.  Id., ¶ 11.

10.      On December 19, 2012, this Court entered an Order: (i) ordering Grail to execute and deliver to the Receiver a form of patent assignment; (ii) authorizing the Receiver to intervene in the N.D. Cal. Action (defined below); and (iii) extending all deadlines to, among other things, sell the '552 Patent (the "Dec. 19, 2012 Order") (Docket No. 96).  Id., ¶ 12.

11.      On December 21, 2012, Grail appealed the Dec. 19, 2012 Order to the United States Court of Appeals for the Second Circuit and filed a motion seeking to stay the Dec. 19, 2012 Order pending appeal.  Id., ¶ 13.  This Court granted a stay pending appeal through January 9, 2013, Mishcon opposed the appeal, and the appeal was eventually withdrawn by stipulation of the parties on January 23, 2013 (Docket. No. 114).  Id., ¶ 13.

12.      On January 2, 2013, this Court entered an Order (the "Jan. 2, 2013 Order") mandating that the Receiver's commissions, and any reasonable attorneys' fees and other

reasonable costs and expenses incurred by the Receiver, shall be paid by Mishcon, to the extent

not otherwise satisfied out of the proceeds of the sale. Id., ¶ 14.

13.     The Receiver reviewed proposals from several brokers and auctioneers. Id., ¶ 15.

The Receiver selected ICAP as the best choice under the circumstances, and after negotiations,

obtained significant concessions from ICAP's proposed terms, including the ability for Mishcon

and the Defendant to make a commission-free purchase of the '552 Patent. Id., ¶ 15.

14.     On February 11, 2013, the Receiver submitted his Second Report (Docket No.

115) (the "Second Report") and moved to retain ICAP Patent Brokerage ("ICAP") as the

exclusive patent auctioneer for the sale of the '552 Patent. Id., ¶ 16. Mishcon opposed the

Second Report on February 17, 2013 (Docket Nos. 117 – 118). Id., ¶ 16.

15.     In an attempt to resolve certain issues raised by Mishcon, the Receiver further

negotiated the proposed agreement with ICAP, obtaining further concessions, and ICAP waived

its commission for any purchase made by Mishcon and waived its minimum fee. Id., ¶ 17. On

March 11, 2013, the Receiver filed a reply (Docket No. 121) with these concessions in further

support of his motion to retain ICAP as the auctioneer to sell the '552 Patent. Id., ¶ 18.

16.     On April 1, 2013, this Court entered an Order (Docket No. 123) (the "April 1,

2013 Order") authorizing the Receiver to: (i) retain ICAP as exclusive patent auctioneer for the

sale of the '552 Patent; (ii) undertake the sale of the '552 Patent pursuant to the terms and

conditions set forth in Appendix A to the ICAP engagement agreement; (iii) solicit binding

offers for the '552 Patent; and (iv) execute a quitclaim deed transferring the '552 Patent to the

successful purchaser of the '552 Patent (the "Quitclaim Deed"). Id., ¶ 19. The April 1, 2013

Order also required ICAP to hold the auction of the '552 Patent within approximately 30 days.

Id., ¶ 20.

17.     The Court authorized the Receiver to accept pre-bids from Mishcon, Grail, and Renesas in advance of the auction.  Id., ¶ 21.  This effectively would have set a floor for the public auction that would follow.  Id., ¶ 21.  None of the three interested parties submitted a pre-bid, and the auction proceeded without a floor or reserve.  Id., ¶ 21.

18.     On April 30, 2013, ICAP conducted the auction for the '552 Patent.  Id., ¶ 22.  There was only one bid, a credit bid submitted by Mishcon in the amount of $500,000 (the "Credit Bid").  Id., ¶ 23.  Because the Receiver negotiated specific terms with ICAP to have ICAP forego any commission in the event Mishcon was the winning bidder, ICAP did not receive any commission for its marketing of the '552 Patent and conduct of the auction.  As a result, the only fees and expenses incurred by Mishcon as the winning bidder are the fees and expenses due to the Receiver and his counsel.  Id., ¶ 23.

19.     As authorized by the Court pursuant to the April 1, 2013 Order, the Receiver prepared a Quitclaim Deed – assigning the '552 Patent to the winner of the auction, Mishcon – and indicated that he was prepared to execute the Quitclaim Deed in exchange for the execution of an Acknowledgement of Credit Bid ("Acknowledgement") from Mishcon.  Usually a winning bidder would tender cash, but because the Receiver was accepting credit, he considered that the winning bidder ought to formally acknowledge the tendering of the credit.  Id., ¶ 24.

20.     Mishcon refused to execute the Acknowledgement.  Id., ¶ 25.

21.     As a result, on May 7, 2013, the Receiver, by his Third Report (the "Third Report") and Motion to Discharge Receiver and to Authorize Submission of Fees and Expenses for Payment (Docket No. 124) requested: (i) a finding that the Receiver had properly discharged all of his obligations relating to the auction for the '552 Patent in compliance with the Court's various Orders; (ii) an Order that the Receiver execute the Quitclaim Deed; (iii) an Order that the

principal value owed by Grail to Mishcon pursuant to the Court's judgment of July 11, 2012 is reduced by $500,000, as a result of Mishcon's Credit Bid; (iv) a discharge of the Receiver from further responsibilities in this matter, effective upon the Receiver's execution and delivery of the Quitclaim Deed to Mishcon; and (v) authorization for the Receiver to submit his fees and expenses for approval by the Court to thereafter be paid by Mishcon.  Id., ¶ 26.

22.     On May 9, 2013, Mishcon filed a response (Docket No. 125) to the Receiver's Third Report ("Mishcon's Response") seeking, among other things, a modification of the relief requested by the Receiver in the Third Report, to require: (i) a revision to the Acknowledgement making clear that the Judgment against Grail will only be partially satisfied in the amount of Mishcon's credit bid *net of* the Receiver's fees, costs and attorneys' fees, and (ii) at least 45 days for Mishcon to accept the assignment of '552 Patent in order to allow Mishcon sufficient time to enter into the N.D. Cal. Action and limit any purported adverse affect to the value of the '552 Patent.  Id., ¶ 27.

23.     On May 17, 2013, the Receiver filed his Reply to Mishcon's Response: (i) taking no position on whether the amount the Receiver's and his counsel's fees and costs are chargeable by Mishcon to Grail and requesting the Court's instruction as to this point; and (ii) indicating his belief that there is no reason to delay the assignment of the '552 Patent to Mishcon.  Id., ¶ 28. On the same date, Grail filed a response (Docket No. 129) in opposition to the Receiver's Third Report and requested, among other things, that any Order to be entered by this Court in relation to the sale of the '552 Patent reflect that: (i) the Judgment has been satisfied in *full* or, alternatively, (ii) the Receiver continue to administer the '552 Patent in order to pursue the patent infringement claims against Renesas in the N.D. Cal. Action (defined below) to increase the value of the '552 Patent.  Id., ¶ 29.

24.     On May 24, 2013, Mishcon filed a reply (Docket No. 136) in opposition to Grail's response to the Receiver's Third Report.  Id., ¶ 30.

25.     On June 20, 2013 (Docket No. 137) (the "June 20, 2013 Order"), this Court entered an Order granting the relief requested by the Receiver in his Third Report with a modification to the Acknowledgement, providing that assignment of the '552 Patent to Mishcon satisfies the Judgment in the amount of the Credit Bid *net of* the Receiver's fees, costs and attorneys' fees as requested by Mishcon.  Id., ¶ 31.

26.     By Order dated June 25, 2013 (the "June 25, 2013 Order") (Docket No. 138), this Court found that the Receiver has properly discharged all of his obligations pursuant to the Orders and, among other things, discharged the Receiver from further responsibilities in the Receivership effective upon execution and delivery of an attached deed assigning the '552 Patent to Mishcon.  The Court also reiterated that the Judgment was to be reduced in amount of Mishcon's Credit Bid net of the Receiver's fees, costs and attorneys fees.  Id., ¶ 32.

27.     On June 27, 2013, the Receiver executed an Assignment of the '552 Patent to Mishcon and delivered the assignment to Mishcon.  Id., ¶ 33.

28.     By the June 20, 2013 and the June 25, 2013 Orders, the Court ordered the parties to confer before making the within Application to, if possible, resolve the issue of the Receiver's fees, costs and attorneys' fees on consent.  Id. at ¶ 34.

29.     Despite good faith effort, the parties have been unable to resolve payment by Mishcon of the Receiver's fees, costs or K&L Gates' fees.  Accordingly, K&L Gates is constrained to file this Application.  Id., ¶ 35.

**B.**   **Patent Infringement Action Pending in the Northern District of California**

30.     While the above-captioned Receivership proceeding was pending in New York, Grail had been litigating a patent infringement suit in the United States District Court for the Northern District of California, captioned as *Grail Semiconductor, Inc. v. Renesas Electronics America, Inc.,* Case No. 3:11-CV-03847-JCS (the "N.D. Cal. Action"). Id., ¶ 36. In the N.D. Cal. Action, Grail sought to recover damages from defendant, Renesas Electronics America, Inc. ("Renesas") for its alleged infringement of the '552 Patent. Id., ¶ 37. Renesas, in turn, alleged a counter-claim against Grail that the '552 Patent was invalid. Id., ¶ 37.

31.     This Court granted the Receiver authority to intervene in the N.D. Cal. Action in his capacity as Receiver of the '552 Patent by the Dec. 19, 2012 Order and on December 27, 2012, the Receiver moved to intervene in the N.D. Cal. Action. Id., ¶ 38.

32.     On January 15, 2013, Grail finally executed an assignment of the '552 Patent in the form ordered by this Court, and Grail – without providing notice or a copy of this assignment to the Receiver – immediately moved to dismiss the N.D. Cal. Action. Id., ¶ 39. Grail evidently attempted to negotiate a dismissal of the N.D. Cal. Case with Renesas without informing the Receiver. Id., ¶ 40. The Receiver first learned of Grail's attempt to obtain a dismissal from Renesas' draft status report in the N.D. Cal. Action. Id., ¶ 40. Grail moved to dismiss the N.D. Cal. Action without conferring with the Receiver and he did not receive a copy of the assignment until after Grail's motion to dismiss was filed. Id., ¶ 40.

33.     A patent infringement plaintiff is entitled to seek damages for infringement dating back up to six years prior to the filing of its complaint. Id., ¶ 41. Both Grail and Mishcon had previously indicated that back damages in the N.D. Cal. Action were important and of value. Id., ¶ 41. A dismissal of the N.D. Cal. Action would have cut off these back damages and could

potentially impaired the value of the '552 Patent. Id., ¶ 41.  This is because a purchaser of the patent would have to file its own suit and could only recover damages dating back from the filing date of its own complaint, which would have been at least two years later than the Grail complaint against Renesas. Id., ¶ 41.

34.    Accordingly, to prevent this loss of value, the Receiver acted immediately upon receiving notice of Grail's actions and on January 16, 2013, filed a motion for leave to substitute as Plaintiff in the place of Grail in the N.D. Cal. Action pursuant to Rule 25 of the Federal Rules of Civil Procedure. Id., ¶ 42.  Only after a hearing before Judge Spero of the N.D. Cal. on January 22, 2013, did the parties to the N.D. Cal. Action stipulate to the Receiver's substitution. Id., ¶ 42.

35.    On February 5, 2013, the N.D. Cal. dismissed Grail from the N.D. Cal. Action and substituted the Receiver in as Plaintiff in the place of Grail and extended all discovery and other deadlines in the N.D. Cal. Action for three months. Id., ¶ 43.

36.    The Receiver submitted a joint case management statement to the N.D. Cal. on June 7, 2013. Id., ¶ 44.  The next status conference before the N.D. Cal. is currently scheduled for July 26, 2013. Id., ¶ 44.  The N.D. Cal. has been informed of the assignment of the '552 Patent to Mishcon. Id., ¶ 45.  The Receiver's counsel circulated a stipulation of substitution to all parties on July 2, 2013. Id., ¶ 46.  On July 17, 2013, Mishcon informed the N.D. Cal. that it did not wish to substitute for Receiver as a party. Id., ¶ 47.  Upon learning this, the Receiver's counsel circulated a stipulation of dismissal for lack of standing without prejudice. Id., ¶ 48.  Renesas sought a dismissal with prejudice from the N.D. Cal. Id., ¶ 49.  The Receiver does not believe he has the authority to stipulate to a dismissal with prejudice, but is taking no action to oppose it in the status conference. Id., ¶ 49.

## SUMMARY OF THE RECEIVER'S FEES

37.     During the Application Period, the Receiver incurred a total of $93,164.75 in Total Fees and rendered a total of 137.0 hours of professional services in this matter at a hourly billing rate of $695.00, which hourly rate was previously approved by this Court pursuant to the Dec. 3, 2012 Order.  Id., ¶ 50.

38.     The fees billed in this case by the Receiver have been billed pursuant to the Receiver's normal billing procedures.  Id., ¶ 51.  The Receiver maintained detailed contemporaneous written time records of the services he rendered to this Court on a daily basis, a copy of which are annexed to the Reibman Declaration as **Exhibit A**.  Id., ¶ 51.

39.     The Receiver's hourly rate, which has been previously approved by this Court's Dec. 3, 2013 Order, is comparable to the rates prevailing in the legal community in the Southern District of New York by partners in large law firms specializing in intellectual property and patent litigation of reasonably comparable skill, experience and reputation.  Id., ¶ 52.

## Voluntary Reductions Taken By the Receiver

40.     The Receiver has voluntarily reduced any time that he expended that, upon careful review, appeared to be either: (i) excessive compared to the tasks being performed or (ii) duplicative of services rendered by his counsel, resulting in a reduction of $16,237.25.  Id., ¶ 53.

41.     The Receiver has also voluntarily reduced by 50 percent, his fees incurred for: (i) a routine review of pleadings filed in the S.D.N.Y. Receivership or the N.D. Cal. Action, amounting to a $1,563.75 reduction, and (ii) non-working travel to and from court hearings and status conferences, amounting to a $486.50 reduction.  Id., ¶ 54.

42.     In sum, the Receiver has voluntarily written off $18,287.50 of his fees.  Id., ¶ 55.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED BY PROJECT CATEGORY

43.     A summary of the total fees billed and the hours expended by the Receiver, broken down by project category, is annexed to the Reibman Declaration as **Exhibit B**. Id., ¶ 56. During the Application Period, the Receiver provided the following services:

**A.**     **Analyzing the '552 Patent**

44.     The Receiver expended 2.3 hours, amounting to $1,598.50 in fees, in connection with analysis of the '552 Patent. Id., ¶ 58. During the Application Period, the Receiver: (i) reviewed U.S. and foreign applications filed corresponding to the '552 Patent; (ii) searched for, and reviewed, additional patent litigations relating to the '552 Patent; (iii) reviewed liens filed against the '552 Patent and communicated with creditors asserting purported liens against the '552 Patent; (iv) reviewed documents provided by Grail to determine the value of the '552 Patent, which were ultimately used in the sale process; and (v) unsuccessfully attempted to negotiate a form of patent assignment with Grail.

45.     Based upon representations made by Grail's counsel in its Notice of Attorney's Lien, a copy of which was sent to the Receiver on December 5, 2012, the Receiver and his counsel anticipated that recovery on the '552 Patent would be quite significant, even if not "at least $100,000,000" as asserted by Grail's counsel.

**B.**     **Retention Issues and Scope of Receivership**

46.     The Receiver expended 0.8 hours, amounting to $556.00 in fees, in connection with determining the scope of the Receivership pursuant to this Court's Orders and attending to other matters concerning his appointment as Receiver. Id., ¶ 59.

C.      **Disposition and Sale of the '552 Patent**

47.     The Receiver expended 38.0 hours, amounting to $26,410.00 in fees, with respect to matters related to the disposition and sale of the '552 Patent.  Id., ¶ 60.  Of the total fees relating to the disposition and sale of the '552 Patent, the Receiver expended: (i) 9.7 hours, or $6,741.50, on soliciting requests for proposals (each an "RFP") and selecting a broker to sell the '552 Patent; (ii) 11.0 hours, or $7,645.00 in fees, on attending to retention issues relating to the chosen patent broker, ICAP, and the negotiation of the initial contract with ICAP; and (iii) 17.3 hours, or $12,023.50, in preparing for, and carrying out, the sale process for the '552 Patent including, among other things, communications with potential bidders, communications with ICAP relating to the auction and instructing his counsel and paraprofessionals regarding preparation of the dataroom and related extranet sites for potential bidders.

48.     Since being appointed, the Receiver consulted with numerous patent brokers and patent auction houses in an effort to identify and solicit firms and individuals with experience selling patents similar to the '552 Patent.  Towards that end, in December 2012, the Receiver sent RFPs to numerous reputable patent brokers and patent auction houses (collectively, the "Solicited Patent Brokers"), including, among others: (i) Ovidian Group, a global intellectual property asset management firm; (ii) Epicenter IP Group, which supports patent transactions; (iii) Thinkfire Services USA, an intellectual property advisory and brokerage firm; (iv) Pluritas, LLC, a limited liability company whose partners have substantial experience in patent transactions; (v) TechnoView IP, Inc., a patent brokerage firm; and (vi) ICAP,  the successor to Ocean Tomo Transactions, which regularly conducts patent auctions.

49.     Several of the Solicited Patent Brokers declined to present a proposal in response to the RFP due to complications arising from the patent litigation surrounding the '552 Patent in

both the above-captioned action and the N.D. Cal. Action.  Of these Solicited Patent Brokers,

two brokers proposed an exclusive bidding agreement for a 10 percent commission with a

$100,000 minimum guaranteed commission. ICAP also submitted a proposal in response to the

RFP and initially requested that the '552 Patent be included in one of ICAP's quarterly patent

auctions in exchange for ICAP receiving 25% of the sale price of the '552 Patent (including a

10% buyer's premium), with a $10,000 minimum commission.

50.     After negotiations with the Receiver, ICAP agreed to waive its buyer's premium

and reduce its total commission to 15% of the sale price of the '552 Patent.  ICAP did not receive

any commission for its marketing of the '552 Patent and conduct of the auction because the

Receiver successfully negotiated specific terms with ICAP to have it forego any commission in

the event a credit bid were to win the auction.  As a result, the only fees and expenses incurred

by Mishcon as the winning bidder are the fees and expenses due to the Receiver and his counsel.

**D.     S.D.N.Y. Receivership Proceedings**

51.     The Receiver expended 60.7 hours, amounting to $42,186.50 in fees, progressing

the S.D.N.Y. Receivership proceedings before this Court. Id., ¶ 61.

52.     Of the fees billed with respect to the S.D.N.Y. Receivership proceedings, the

Receiver expended: (i) 13.6 hours, or $9,452.00 in fees monitoring and strategizing with his

counsel regarding the Receiver's Report and the assignment of the '552 Patent; (ii) 24.8 hours, or

$17,236.00 in fees, developing the proposed plan of sale for the '552 Patent, monitoring and

strategizing with his counsel regarding the Receiver's Second Report, monitoring and assessing

any opposition with respect to the sale of the '552 Patent and negotiating a revised plan of sale

with ICAP; (iii) 4.8 hours, or $3,336.00 in fees, strategizing with counsel regarding, and

responding to, Grail's appeal of the Dec. 19, 2012 Order to the Second Circuit and Grail's

motion for a stay pending appeal; (iv) 4.8 hours, or $3,336.00 in fees, on conferring with his counsel regarding developments in the Receivership and legal strategy; and (v) 12.7 hours, or $8,826.50, conferring with his counsel, reviewing, supervising and commenting on the Receiver's Third Report and motion for discharge and addressing other post-Auction matters.

**E.** **Services Rendered in Connection with the N.D. Cal. Action**

53.     The Receiver expended a total of 20.7 hours, amounting to $14,386.50 in fees, in connection with the N.D. Cal. Action, as follows: (i) 9.9 hours, or $6,880.50 in fees, dealing with contested issues relating to the Receiver's substitution in the N.D. Cal. Action, including *inter alia* (a) reviewing Grail's motion to dismiss the N.D. Cal. Action for lack of standing and preparing for, and prosecuting,  a motion requesting authority for the Receiver to intervene in the N.D. Cal. Action (the "Intervention Motion") and substituting the Receiver in place of Grail, (b) reviewing and commenting on a stipulation authorizing the Receiver's intervention, (c) reviewing, providing comments to, and revising the Receiver's reply to Grail's response to the Intervention Motion, (d) attending to the need to preserve back damages; and (ii) 10.8 hours, or $7,506.00 in fees conferring with, and instructing, his counsel regarding case management conferences held before the N.D. Cal. Court on December 7, 2012, January 18, 2013, April 5, 2013 and on June 14, 2013.  Id., ¶ 62.

**F.** **Discovery**

54.     The Receiver expended 7.9 hours, or $5,490.50 in fees, dealing with discovery issues that arose in the N.D. Cal. Action, including reviewing a subpoena served on Grail by Renesas for the production of documents in the N.D. Cal. Action and instructing his counsel relating to same.  Id., ¶ 63.

**G.**     **Docket Review**

55.     The Receiver expended 4.5 hours, amounting to $3,127.50 in fees, reviewing

pleadings filed in the S.D.N.Y. Receivership and the N.D. Cal. Action to determine whether

there were any outstanding issues that needed to be addressed in connection with the disposition

of the '552 Patent and the N.D. Cal. Action.  The Receiver has voluntarily reduced the amount of

the fees requested for docket review by 50 percent or $1,563.75.  Id., ¶ 64.

**H.**     **Preparation of Fee Application**

56.     The Receiver expended 0.4 hours, amounting to $278.00 in fees, seeking to

negotiate an agreement with Mishcon relating to his fees in compliance with this Court's June 20,

2013 and June 25, 2013 Orders and instructing his counsel relating to the preparation of this

Application.  Id., ¶ 65.

**I.**     **Legal Case Management**

57.     The Receiver expended 0.3 hours, amounting to $208.50 in fees, conferring with

his counsel and paraprofessionals relating to the filing and service of the Receiver's three

Reports, along with any responses to oppositions filed thereto.  Id., ¶ 66.

**J.**     **Non-Working Travel**

58.     The Receiver expended 1.4 hours, amounting to $973.00, in fees for non-working

travel during the Application Period, which fees were incurred for the Receiver's attendance at a

hearing held before this Court.  The Receiver has voluntarily reduced the fees requested for Non-

Working Travel by 50 percent or $486.50.  Id., ¶ 67.

## BASIS FOR THE RELIEF REQUESTED

59.     Although Section 8004(a) of the New York Civil Practice Law and Rules (the "CPLR") ordinarily applies a cap of 5 percent of "the sums received and disbursed" by the Receiver, if the Receiver does not have any funds in his possession at the termination of the receivership, Section 8004(b) of the CPLR provides that

> the court, upon application of the receiver, may fix the compensation of the receiver and the fees of his attorney, in accordance with the respective services rendered, and may direct the party who moved for the appointment of the receiver to pay such sums, in addition to the necessary expenditures incurred by the receiver.

CPLR § 8004(b).

60.     In addition, the Dec. 3, 2012 Order provided that:

> proceeds from the sale, transfer, and/or assignment of the '552 Patent, *after payment to the Receiver of necessary expenses and fees as allowed by the Court*, shall be paid to Mishcon up to the amount of the Judgment plus interest at a rate of 0.20% as of July 11, 2012

and the Jan. 2, 2013 Order also provided, in relevant part, that:

> subject to Court approval, the Receiver's commissions, and any reasonable and necessary attorneys' fees and other reasonable costs and expenses incurred by the Receiver, shall be paid by the Petition, Mishcon De Reya New York LLP, to the extent not otherwise satisfied out of the proceeds of the sale . . .

61.     A receiver appointed by a court that reasonably and diligently discharges his duties is to be fairly compensated for services rendered and expenses incurred.  S.E.C. v. Byers, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008).  Where the Receiver's fees and expenses cannot be paid out of assets at the time the Court discharges him, the Court may find that special circumstances exist to require the party which moved for the appointment of a receiver – i.e. Mishcon – to pay for the Receiver's necessary fees and expenses.  Gasser v. Infanti Int'l Inc.,

358 F. Supp. 2d 176, 183 (E.D.N.Y. 2005) (citing 14 Weinstein, Korn & Miller, ¶ 8004.09, at 80-72 (2d ed. 2004) ("Since it would be unfair to leave the receiver without compensation, and the party who sought the receivership is the person most directly responsible for the receiver's employment, it seems fair to put the burden of payment on him") and Land v. Esrig, 42 N.Y.S.2d 623 (Supp. Ct. Kings Co. 1943) ("plaintiff may not be heard to object when called upon to meet an ordinary obligation necessary and obviously incidental to the relief which he himself sought, obtained and from which he reaped benefits.").

62.     The amount of compensation to be awarded to court-appointed receivers and their counsel is within this Court's discretion. Byers, 590 F. Supp. 2d at 644; FTC v. Consumer Health Benefits Ass'n, No. 10 Civ. 3551, 2011 WL 5513182 at *1 (E.D.N.Y. Nov. 10, 2011). Where the Receiver is not in possession of any funds at the termination of a receivership, the Court may authorize compensation above the ordinary 5 percent cap representing the reasonable value of the services rendered by the Receiver under the doctrine of quantum meruit if the statutory 5 percent would be "manifestly unfair." Fed. Home Loan Mortgage Corp. v. S.E.A. Yonkers Assocs., 869 F. Supp. 187, 188 (S.D.N.Y. 1994). So, for example, when a Receiver is required to expend a great deal of time to attend to delays caused by others or outside of the Receiver's control, the Court may authorize a Receiver to be compensated for the reasonable value of his services. See id.

63.     In determining a reasonable fee for a receivership, the court may consider "all of the factors involved in a particular receivership" including, among other things, "the complexity of problems faced, the benefits of the receivership estate, the quality of the work performed, and the time records presented." Byers, 590 F. Supp. 2d at 644; Consumer Health, 2011 WL 5513182 at *1. Although the results obtained by a receiver and his counsel are important, the

benefits of a receivership may take "more subtle forms than a bare increase in monetary value."
Id. (citing Gaskill v. Gordon, 27 F.3d 248, 253 (7th Cir. 1994)); S.E.C. v. Elliott, 953 F.2d 1560,
1577 (11th Cir. 1992).

64.     Here, no funds were in the Receiver's possession at the time of his discharge
pursuant to the June 25, 2013 Order and the Receiver believes he is entitled to compensation for
the reasonable value of his services in the amount of the Total Fees requested.  For one, the
Receiver expended 38 hours of time to: (i) solicit numerous brokers to sell the '552 Patent and to
ultimately choose ICAP as broker and (ii) negotiate a patent brokerage agreement with ICAP
pursuant to which it agreed to waive its buyer's premium and reduce its total commission to 15%
of the sale price of the '552 Patent (or zero where the only bid is a credit bid).  Moreover,
brokers also indicated that the '552 Patent potentially had a high value.  Second, the Receiver
engaged in 60.7 hours of motion practice before this Court, much of which resulted from either
Mishcon or Grail, at varying times, opposing the assignment of the '552 Patent to the Receiver or
the  plan of sale for the '552 Patent, thus necessitating a negotiation of a revised plan of sale.
Third, the Receiver expended 20.7 hours: (i) conferring with, advising and instructing his
counsel with respect to his intervention and substitution in the N.D. Cal. Case, (ii) conferring
with, advising and instructing his counsel with respect to his response to the opposition to his
substitution, and (iii) ultimately negotiated a stipulation of substitution.  In light of the substantial
services rendered by the Receiver, the Receiver submits that the reasonable value of his services
amounts to the Total Fees requested and that anything less than this amount would be manifestly
unfair in light of the work performed.

## A.   The Receiver's Hourly Rate is Reasonable

65.   When determining attorneys' fee awards, both the Second Circuit and the Supreme Court have employed the lodestar method to calculate the "presumptively reasonable fee," which is the product of the "reasonable hourly rate" and the hours reasonably expended by such attorney.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 183-84 (2d Cir. 2008); Consumer Health, 2011 WL 5513182 at *1.

66.   Pursuant to the Dec. 3, 2013 Order, this Court has already determined that the Receiver's reasonable hourly rate is $695.00.

67.   The Receiver's approved hourly rate is also "in line with those prevailing in the [Southern District of New York] for similar services by lawyers of reasonably comparable skill, experience, and reputation." Byers, 590 F. Supp. 2d at 645 (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)); Arbor Hill, 522 F.3d at 190; Simmons v. N.Y.C. Transit Authority, 575 F.3d 170, 172 (2d Cir. 2009).  See e.g., Diplomatic Man, Inc. v. Nike, Inc., No. 08 Civ. 139, 2009 WL 935674 at *5 (S.D.N.Y. Apr. 7, 2009) (awarding $650 per hour to partner with 36 years of experience in copyright infringement action in 2008); GAKM Res. LLC v. Jaylyn Sales Inc., No. Civ. 6030, 2009 WL 2150891 at *7-*8 (S.D.N.Y. July 20, 2009) (approving hourly rates of between $600 to $650 for intellectual property partners at a national law firm with between 16 to 38 years of experience back in 2009); Yurman Designs, Inc. v. PAJ, Inc., 125 F. Supp. 2d 54, 58 (S.D.N.Y. 2000) (approving rate of $520.69 for copyright and trademark partners back in 2000).

**B.**     **The Hours Expended by the Receiver Are Reasonable**

68.     After determining the appropriate hourly billing rate, the court must then calculate

the hours reasonably expended by the Receiver.  See Gierlinger v. Gleason, 160 F.3d 858, 876

(2d Cir. 1998); Consumer Health, 2011 WL 5513182 at *2.  In determining the reasonable

number of hours expended, this Court should examine the particular hours expended by the

Receiver "with a view to the value of the work product of the specific expenditures to the client's

case." Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997); Pearson Education, Inc.

Vergara, No. 09 Civ. 6832, 2010 WL 3744033 at *6 (S.D.N.Y. Sept. 27, 2010).  "Hours that are

excessive, redundant, or otherwise unnecessary are not 'reasonably expended' and should be

excluded from the initial fee calculation.  Byers, 590 F. Supp. 2d at 644.

69.     The Receiver has reviewed his time records to remove any excessive, redundant

or otherwise unnecessary time and has voluntary written off a total of 20.4 hours in time

amounting to $16,237.25 in fees.  Id., ¶ 53.

70.     In addition, the Receiver has taken a 50 percent voluntary reduction of the fees

incurred for: (i) Docket Review and (ii) Non-Working Travel, which has resulted in an additional

$ 2,050.25 reduction in fees.  Id. ¶¶ 54, 64, 67.

71.     In light of the services rendered by the Receiver in this matter, as more fully set

forth in the Summary of Professional Services above and time records provided, the Receiver

submits that the hours expended by the Receiver to provide these legal services is reasonable.

WHEREFORE, the Receiver respectfully requests entry of an Order: (i) authorizing payment of his Total Fees for the Application Period in the amount of $93,164.75; (ii) directing Mishcon to pay the Receiver's Total Fees; and (iv) granting such other and further relief as this Court deems just and proper.

Respectfully Submitted,

K&L GATES LLP

Dated:  July 25, 2013

By:      /s/   _Andrew L. Reibman_
          Andrew L. Reibman, Esq.
          599 Lexington Avenue
          New York, New York 10022
          (212) 536-3900 (telephone)
          (212) 536-3901 (facsimile)