USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/20/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MISHCON DE REYA NEW YORK LLP,

                Petitioner,

        -v-

GRAIL SEMICONDUCTOR, INC.,

                Respondent.
------------------------------------------------------------------------X

11 Civ. 4971 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

Petitioner Mishcon de Reya LLP ("Mishcon"), a law firm, initiated this action by seeking attachment of Respondent Grail Semiconductor Inc.'s ("Grail") sole asset, Patent Number 6,642,552 (the "'552 Patent"), in aid of arbitration. (Docket No. 1). The Court ordered and confirmed the attachment (Docket Nos. 5, 29), and, in April 2013, the '552 Patent was sold in Court-ordered receivership proceedings to Mishcon itself. Presently before the Court are applications for fees and expenses of the receiver, Andrew L. Reibman (the "Receiver"), and K&L Gates LLP ("K&L Gates"), the Receiver's counsel. (Docket Nos. 144, 148). In addition, Mishcon cross moves seeking a declaration of invalidity of a lien on the '552 Patent purportedly held by the law firm Niro Haller & Niro ("Niro"), plus attorney's fees and expenses. (Docket No. 150). For the reasons explained below, the applications of the Receiver and K&L Gates for fees and costs are GRANTED; Mishcon's cross-motion for a declaration of invalidity is GRANTED; and its cross-motion for fees and costs is DENIED.

## BACKGROUND

This case has a long and somewhat tortured history and has been the subject of several

prior opinions by this Court, familiarity with which is assumed.  *See Mishcon de Reya N.Y. LLP v. Grail Semiconductor, Inc.*, No. 11 Civ. 4971 (JMF), 2012 WL 5512240 (S.D.N.Y. Nov. 13, 2012) ("*Mishcon II*"); *Mishcon de Reya N.Y. LLP v. Grail Semiconductor, Inc.*, No. 11 Civ. 4971 (RJH), 2011 WL 6957595 (S.D.N.Y. Dec. 28, 2011) ("*Mishcon I*").  The Court recites here only those facts relevant to the instant motions.

The lawsuit arises out of a prior dispute between Mishcon and Grail over unpaid attorney's fees relating to Mishcon's representation of Grail in a California state-court action.  *See Mishcon I*, 2011 WL 6957595, at *1.  The parties were unable to resolve their fee dispute, and, on July 19, 2011, Mishcon filed for arbitration.  *See id.* at *2.  The same day, Mishcon filed an order to show cause before this Court seeking an *ex parte* order of attachment of the '552 Patent, on the ground that Grail was insolvent and likely to transfer the '552 Patent.  *See id.*  The Honorable Richard J. Holwell — to whom the case was then assigned — ordered the attachment on July 22, 2011, and confirmed the attachment on December 28, 2011.  *See id.*

Mishcon and Grail subsequently entered into a settlement agreement, and the Court entered judgment in favor of Mishcon and against Grail for $2,111,000 (the "Judgment") on July 11, 2012.  (Docket No. 48).  Thereafter, on Mishcon's motion (Docket No. 50), the Court ordered the appointment of a receiver to sell the '552 Patent by auction, *see Mishcon II*, 2012 WL 5512240, at *3-4, and appointed the Receiver, at an hourly rate of $695, to serve in that role. (Docket No. 79).  The Court authorized Mishcon to credit bid up to the amount of the Judgment, and ordered Grail to "take all necessary steps to turn over and assign all of its rights, title, and interest in the '552 Patent to the Receiver."  (*Id.*).

In the meantime, Grail was involved in a separate patent action relating to the '552 Patent in the Northern District of California, *Grail Semiconductor, Inc. v. Renesas Electronics America,*

*Inc.*, No. 11 Civ. 3847 (the "Infringement Action"). In that case, Grail — represented by Niro — had sued Renesas Electronics America for alleged infringement of the '552 Patent. (Decl. of Andrew L. Reibman as Court-Appointed Receiver ("Rebiman Decl.") (Docket No. 145) ¶ 37; Intervenor Niro, Haller & Niro's Objection To Mishcon's Cross-Motion To Invalidate the Niro Firm's Security Interest ("Niro Mem.") (Docket No. 156) 1). After this Court appointed the Receiver, it authorized him to appear in the Infringement Action "to the extent necessary to preserve or protect the value of the '552 Patent" (Docket No. 96, at 1), which he did after Grail assigned its interests in the '552 Patent to him. (Reibman Decl. ¶ 43).

Ultimately, the Receiver held an auction to sell the '552 Patent in April 2013. Although Niro had represented to the Receiver that the anticipated value of the '552 Patent was at least $100,000,000 (Reibman Decl. ¶ 5; *id.*, Ex. A) (and the parties had previously led the Court to believe that its value was significant), Mishcon was the only bidder at the auction, and it acquired the '552 Patent for a credit bid of $500,000. (Decl. of James J. McGuire, Esq. (Docket No. 152) ("McGuire Decl.") ¶ 9). Prior to the auction, on July 18, 2013, Niro filed with the United States Patent and Trademark Office a Patent Security Agreement (the "Security Interest") between it and Grail, dated July 13, 2012, which purported to grant it a "first priority security interest in all of [Grail's] right, title and interest in" the patent. (McGuire Decl., Ex. A, at 2).

Currently before the Court are applications for fees and expenses by the Receiver and the Receiver's counsel (Docket Nos. 144, 146), and a cross-motion by Mishcon to invalidate Niro's Security Interest and for attorney's fees and costs (Docket No. 150). The Court first addresses the applications for fees and expenses, and then turns to Mishcon's cross-motion.

## DISCUSSION

**A. Applications for Fees and Expenses**

The Receiver seeks $93,164.75 in fees, and K&L Gates seeks $224,135.75 in fees and $2,318.20 in expenses. (Corrected Application of Andrew L. Reibman, as Court-Appointed Receiver, for Allowance of Fees ("Receiver Application") (Docket No. 148) 1; Application of K&L Gates for Allowance of Its Fees & Reimbursement of Its Expenses as Counsel to the Receiver ("K&L Gates Application") (Docket No. 144) 1). The basis for those requests is Rule 8004 of the New York Civil Practice Law and Rules, which provides for the commissions that a court-appointed receiver and his attorneys may receive for their services. N.Y. C.P.L.R. 8004.

### 1. The Receiver's Fees

Mishcon does not dispute that the Receiver is entitled to some fees and that it is responsible for paying those fees. (Petitioner-J. Creditor's Mem. Law ("Petitioner's Mem.") (Docket No. 151) 7-8). Instead, Mishcon challenges the Receiver's request on the ground that it exceeds the maximum allowable receiver's fees under C.P.L.R. Rule 8004(a). (*Id.*). Under that Rule, a receiver's commission is generally limited to the maximum of five percent of the "sums received and disbursed by him" or $100, whichever is higher. N.Y. C.P.L.R. 8004(a). Thus, Mishcon argues that the Receiver should receive a commission of five percent of the value of its $500,000 credit bid, or $25,000. (Petitioner's Mem. 6).

The five percent cap, however, applies only where there are "sums received and disbursed by [the receiver]." N.Y. C.P.L.R. 8004(a). Rule 8004(b) provides that if there are no funds in the hands of the receiver at the termination of the receivership, the court "may fix the compensation of the receiver and the fees of his attorney, in accordance with the respective services rendered, and may direct the party who moved for the appointment of the receiver to pay such sums." N.Y. C.P.L.R. 8004(b). Rule 8004(b) does not contain have a five percent cap, and New York courts have consistently held that "if no property has been received and disbursed

by the receiver, the fee which the court may fix pursuant to CPLR 8004(b) is not subject to the fee restrictions set forth in CPLR 8004(a) because the latter provision, by its own terms, is inapplicable." *Amusement Distribs., Inc. v. Oz Forum, Inc.*, 493 N.Y.S.2d 791, 793 (2d Dep't 1985); *see also New Fuzhou Senior Ass'n USA, Inc. v. Chaoxiang Lin*, No. 104203/10, 2012 N.Y. Misc. LEXIS 1356, at *7 (N.Y. Sup. Ct. Mar. 20, 2012) (holding that the "fee restriction contained within CPLR 8004(a), regarding commissions of receivers is not applicable to this case, as funds did not pass through [the receiver's] hands").[1]  Here, because the only bid was made by credit, the Receiver did not receive or disburse any funds.  Accordingly, the five percent cap does not apply.

In a case where a receiver's tasks "do not involve the handling of funds but nevertheless are of value to the court and the parties," 14 Weinstein, Korn & Miller, New York Civil Practice ¶ 8004.09 (2013), the Court is required to "determine whether the fees, expenses and the requested compensation are appropriate and reasonable in light of the tasks required" by "ensur[ing] that the receiver properly kept receipts for expenditures and itemized his invoice." *New Fuzhou Senior Ass'n USA*, 2012 N.Y. Misc. LEXIS 1356, at *7.  The Court has reviewed the Receiver's detailed, daily time records (Reibman Decl., Ex. B), and finds that the hours the Receiver expended on this matter were appropriate and reasonable.  The Receiver spent time analyzing the '552 Patent (Receiver Application ¶¶ 44-45); retaining a patent broker (*id.* ¶¶ 46-50); engaging in extensive motion practice before this Court regarding the assignment of, and the

---

[1]  The *Amusement Distributors* Court recognized that this statutory construction could produced an "anomalous result," whereby "a receiver who collected nothing at all might, in the court's discretion, receive an allowance, payable by the judgment creditor, under CPLR 8004(b), larger in amount than if he had succeeded in collecting some small sum upon which he could be allowed either a maximum of 5% or $100."  493 N.Y.S.2d at 794.  Nevertheless, the Court adopted the interpretation, noting that the State Legislature had approved the bill even after the anomaly was brought to its attention.  *See id.*

plan of sale for, the '552 Patent (*id.* ¶¶ 51-52); and rendering various services related to the Infringement Action (*id.* ¶¶ 53-58), tasks that were all warranted.  Moreover, the Court previously set the Receiver's hourly rate at $695 (Docket No. 79), which is "in line with [prevailing rates] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *SEC v. Byers*, 590 F. Supp. 2d 637, 645 (S.D.N.Y. 2008) (internal quotation marks omitted); *see also, e.g.*, *Diplomatic Man, Inc. v. Nike, Inc.*, No. 08 Civ. 139 (GEL), 2009 WL 935674, at *5 (S.D.N.Y. Apr. 7, 2009) (approving partner's hourly fee of $650); *GAKM Res. LLC v. Jaylyn Sales Inc.*, No. 08 Civ. 6030 (GEL), 2009 WL 2150891, at *8 (S.D.N.Y. July 20, 2009) (approving of intellectual property partner's hourly rate of $650).  Accordingly, Mishcon is ordered to pay the Receiver the requested $93,164.75 in fees.

### 2. K&L Gates's Fees and Expenses

The Court also rejects Mishcon's challenges to K&L Gates's request for fees and expenses.  Mishcon contends that K&L Gates's requested fees are excessive on the grounds that: (1) it failed to act prudently in prosecuting the Infringement Action; (2) its work relating to the assignment or sale of the '552 Patent was "well within the scope of the Receiver's legal abilities and should have been handled by him"; and (3) many of the billable hours, such as a $27,000 charge for its fee application, were "neither reasonable nor necessary."  (Petitioner's Mem. 12-14).  Having reviewing K&L Gates's detailed time records (Decl. of Eric A. Prager Supp. K&L Gates LLP's Mot. Approval of Its Fees and Expenses ("Prager Decl.") (Docket No. 143), Ex. C), as well as various materials relating to K&L Gates's prosecution of the Infringement Action (Supplemental Decl. of Eric A. Prager Supp. K&L Gates LLP's Mot. Approval of Its Fees and Expenses ("Prager Supplemental Decl.") (Docket No. 155), Exs. B, C), the Court concludes that these arguments are without merit.

First, K&L Gates did act prudently in the Infringement Action, spending a reasonable number of hours obtaining the Receiver's substitution for Grail and engaging in motion practice to preserve the value of damages that could have been recovered. (K&L Gates Application ¶ 56; Joint Reply Mem. Law Opp'n Applications ("Joint Reply Mem.") (Docket No. 153) ¶ 10; Prager Decl. ¶¶ 40-41). Mishcon's contention that K&L Gates "failed to oppose aggressive third-party discovery" is inaccurate because all but one of the third parties served with document subpoenas were already represented by counsel (Prager Supplemental Decl. ¶¶ 9-10), and the one exception had been subpoenaed before the Receiver was appointed (*id.* ¶¶ 10, 12). Second, although it is true that "a Receiver who is a lawyer is expected to perform customary legal duties connected with his tenure," *Martini v. Martini*, 727 N.Y.S.2d 322, 322 (2d Dep't 2001), the services that K&L Gates performed — including engaging in motion practice over the assignment of the '552 Patent, litigating the retention of the patent brokerage firm, and representing the Receiver in the Infringement Action — went far beyond the ordinary responsibilities of a Receiver. Third, the Court has reviewed the time records submitted by K&L Gates (Prager Decl., Ex. C), and concludes that it did, in fact, bill a reasonable number of hours for its efforts.[2] Accordingly, Mishcon is ordered to pay K&L Gates its requested fees of $224,135.75.

Mishcon does not challenge K&L Gates's request for expenses, and having reviewed K&L Gates's itemized descriptions of its expenses (Prager Decl., Exs. C, E), the Court concludes that K&L's request for $2,318.20 in expenses is reasonable. Accordingly, Mishcon is ordered to pay K&L Gates its requested expenses of $2,318.20 as well.

---

[2] Mishcon argues that the amount billed by K&L Gates on the preparation of the fee application was unreasonable because its fee application was "mostly identical to the Receiver's Application." (Petitioner's Mem. 14). This assertion ignores the fact that K&L Gates appears to have prepared *both* applications and that the Receiver billed only 0.4 hours related to the preparation of his application, amounting to $278 in fees. (Receiver Application ¶ 56).

7

**B. Mishcon's Cross-Motion To Invalidate Niro's Security Interest**

The Court turns then to Mishcon's cross-motion to invalidate Niro's security interest in the '552 Patent. As noted, Niro filed the Security Interest with the United States Patent and Trademark Office on July 18, 2013, purportedly granting Niro a "first priority security interest in all of [Grail's] right, title and interest in" the '552 Patent. (McGuire Decl., Ex. A at 2). The agreement is dated July 13, 2012. (*Id.* at 1). Mishcon moves for an order declaring the Security Interest invalid, and further requests that the Court award it attorney's fees under New York Debtor and Collection Law Section 276-a. (Petitioner's Mem. 14-25).

    **1.**    **Subject-Matter Jurisdiction**

As an initial matter, despite Niro's argument to the contrary, the Court has jurisdiction over this dispute because such jurisdiction is "necessary to give effect to the court's judgment." *Finley v. United States*, 490 U.S. 545, 551 (1989). In *Trepel v. Diop*, No. 02 Civ. 7726 (GEL), 2003 WL 22283816 (S.D.N.Y. Oct. 2, 2003), the Court confronted an analogous situation where a judgment creditor was the successful bidder at a court-ordered sale of the judgment debtor's apartment, and a dispute arose between the judgment creditor and the apartment cooperative over the judgment creditor's right to access the apartment. Although recognizing that "[t]he ancillary jurisdiction of the federal court has to stop at some point," then-District Judge Gerard E. Lynch concluded that the Court had jurisdiction over the dispute between the judgment creditor and the cooperative because "[t]he dispute essentially concern[ed] the nature of the property that was the subject of the attachment, and the content of the rights that were transferred with the subsequent sale." *Id.* at *2-3. Here, too, the dispute concerns the nature of '552 Patent that was the subject of the attachment, and the content rights that Mishcon acquired when it purchased the '552 Patent at auction. In short, "the dispute centers on the substance of ownership of the asset that

came under this Court's jurisdiction pursuant to its judgment in the underlying litigation," which is "exactly the kind of dispute that the case law holds is within [its] jurisdiction." *Id.* at *3; *see also Grimes v. Chrysler Motors Corp.*, 565 F.2d 841, 844 (2d Cir. 1977) ("[T]he exercise of ancillary jurisdiction is appropriate where the subsidiary controversy has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." (internal quotation marks omitted)).

Niro's argument that there is no controversy ripe for judicial determination over the Security Interest is similarly unavailing. (Niro Mem. 3-6). Mishcon has indicated that it would like to sell the '552 Patent, but that it must "clear-up" the lien in order to do so. (McGuire Decl. ¶ 10). A request for a declaratory judgment — which, in essence, is what Mishcon seeks — is ripe for adjudication if there "is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005) (internal quotation marks omitted). Courts have held that the existence of a lien, where the lien "impacts a property owner's financial options," creates a dispute that is ripe for adjudication. *In re Casarotto*, 407 B.R. 369, 374 (Bankr. W.D. Mo. 2009) (collecting cases). In light of Mishcon's professed desire to sell the '552 Patent, and Niro's representation that it intends to enforce its rights in the '552 Patent "as part of any transaction in which the '552 patent is sold, assigned or transferred" (Reply Declaration of Vincent Filardo, Jr., Esq. (Docket No. 159), Ex. A), the issue is sufficiently ripe for adjudication.

### 2. Status of the Lien

Although Mishcon has not styled its motion as one for declaratory relief, that is effectively what it seeks — specifically, "an Order . . . declaring [Niro's] Security Interest in [the '552 Patent] to be null, void, and of no legal effect." (Petitioner's Mem. 1). Rule 57 of the

Federal Rules of Civil Procedure "contemplates that an action for a declaratory judgment is a civil action subject to the Federal Rules." *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995). Generally, therefore, "a party may not make a *motion* for declaratory relief, but rather . . . must bring an *action* for a declaratory judgment." *Id.*; *see also* 10B Charles Alan Wright, Arthur R. Miller et al., Federal Practice & Procedure § 2768 (describing the procedures for declaratory actions). Thus, the only way a motion for declaratory relief "can be construed as being consistent with the Federal Rules is to construe it as a motion for summary judgment on an action for a declaratory judgment." *Int'l Bhd. of Teamsters*, 160 F.R.D. at 456; *see also, e.g.*, *Kam-Ko Bio-Pharm Trading Co. Ltd.-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) ("[T]he district court thus properly construed [the plaintiff's] 'motion' for declaratory judgment as a motion for summary judgment on [the plaintiff's] 'action' for declaratory judgment.").

Accordingly, the Court construes Mishcon's cross-motion as a motion for summary judgment on an action for a declaratory judgment. *Cf. Jones v. McMahon*, No. 98 Civ. 374 (FJS) (GHL), 2007 WL 2027910, at *5 (N.D.N.Y. July 11, 2007) (*sua sponte* construing the parties' submissions regarding the plaintiffs' request for a "declaratory order" as a motion to dismiss for failure to state a claim, and a response thereto).[3] Mishcon is therefore entitled to its requested relief only if it can demonstrate that there is "no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence must be

---

[3] At least one court has declined to follow this procedure — instead dismissing a motion for declaratory relief outright — where the party seeking such relief failed to provide fair notice of the claim that it pressed in its "Motion for Partial Summary Judgment Seeking Declaratory Relief." *See Bisnews AFE (Thai.) Ltd. v. Aspen Research Grp. Ltd.*, No. 11 Civ. 3108 (NRB), 2012 WL 3283479, at *1 (S.D.N.Y. Aug 13, 2012). Here, however, Niro plainly had notice of Mishcon's claim (in fact, it was Niro that intervened in this action in the first place (*see* Docket No. 62)), and Niro has objected to the procedural propriety of Mishcon's cross-motion only in the most obscure of forms (*see* Niro Mem. 1).

viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). Mishcon bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Mishcon has, in fact, demonstrated that it is entitled to its requested relief. Under both California and New York law,[4] the disposition of a secured party's collateral results in the discharge of all subordinate security liens (other than those that are non-dischargeable under state law, none of which is relevant here). *See* Cal. Com. Code § 9617(a); N.Y. U.C.C. § 9-617(a)(3); *see also Preferred Display, Inc. v. CVS Pharmacy, Inc.*, 923 F. Supp. 2d 505, 511 (S.D.N.Y. 2013) (noting that where a secured party instituted the public sale of collateral and then purchased the collateral itself, the sale "terminated any subordinate interests in the collateral"). Niro argues that its interest is superior to Mishcon's, and therefore was not discharged by the auction sale, because it filed a series of UCC-3 financing statements in July 2012, prior to the patent auction. (Niro Mem. 8-10). Even accepting the dates on which Niro claims to have filed these financing statements, however, Mishcon's attachment against the '552 Patent issued before that — on January 6, 2012. (Docket No. 29). That attachment rendered Mishcon a lien creditor, *see* Cal. Com. Code § 9102(a)(52)(A)(i); Niro Mem. 9, and Niro itself concedes that a party's security interest is subordinate to the rights of any person that becomes a lien creditor before the secured party perfects its interest. (Niro Mem. 9).

---

[4] Mishcon argues that California law determines issues of perfection and priority with regard to the Security Interest (Petitioner's Mem. 16), but Niro cites New York law in its opposition memorandum (Niro Mem. 9-10). In either case, the outcome is the same.

Niro also argues that the perfection of its Security Interest predated Mishcon's status as a lien creditor because "a judgment creditor *can* obtain a lien on personal property as of the date a receiver is appointed to sell that personal property," and it filed its financing statements before the appointment of the Receiver.  (Niro Mem. 9-10 (emphasis added)).  But whether or not the appointment of a receiver *can* give a judgment creditor a lien on personal property, the fact is that Mishcon acquired its lien here by attachment, which occurred approximately eleven months before the Receiver's appointment and approximately six months before the UCC-3 filings.  (*See also* Niro Mem. 9-10 (quoting Siegel's Practice Commentaries for the proposition that "*one of the things* that will give a judgment creditor a lien . . . is an order appointing a receiver" (emphasis added))).  In sum, there is no genuine dispute that Niro's interest was subordinate to Mishcon's when Mishcon acquired the patent at the auction held on April 30, 2013.  The Security Interest was therefore extinguished on that date.[5]

### 3.     Attorney's Fees and Costs

Finally, as a matter of law, Mishcon may not be awarded attorney's fees and costs because it is proceeding *pro se*.  (*See, e.g.*, Docket No. 150, at 1).  Mishcon argues that New York Debtor and Collection Law Section 276-a, which permits the Court to "fix . . . attorney's fees of the creditor" where a conveyance is made with intent to "hinder, delay or defraud . . . creditors," provides authority for the recovery of fees and costs.  (Petitioner's Mem. 24-25).  But "[i]t is well-settled that pro se litigants . . . are not entitled to fee awards or litigation expenses authorized by fee-shifting statutes," *Newman & Cahn, LLP v. Sharp*, 388 F. Supp. 2d 115, 119 (E.D.N.Y. 2005) (citing *Kay v. Ehrler*, 499 U.S. 432, 435 (1991); *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983); *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 695 (2d Cir. 1998)), and

---

[5]     In light of the foregoing, the Court need not address Mishcon's alternative arguments for invalidation of the Security Interest.  (Petitioner's Mem. 15-16, 18-24).

12

"[t]his principle applies equally to attorneys at law firms that represent . . . the firm in a pro se capacity," *id.* (citing *Menton v. Experian Corp.*, No. 02 Civ. 4687 (NRB), 2003 WL 21692820, at *10-11 (S.D.N.Y. July 17, 2003)); *see also Sheldon v. Khanal*, No. 08 Civ. 3676 (KAM), 2011 WL 3876970, at *7 (E.D.N.Y. Aug. 31, 2011). The Court declines Mishcon's invitation to deviate from this well-established precedent based solely on "the plain language of 276-a" (Reply Mem. Law Further Supp. Cross-Motion (Docket No. 158) 10), as none of the statutes in the aforementioned cases explicitly exempted *pro se* litigants either. Accordingly, Mishcon's request for attorney's fees and costs is DENIED.

## CONCLUSION

For the reasons stated above, Mishcon is ordered to pay the Receiver $93,164.75 in fees and to pay K&L Gates $224,135.75 in fees and $2,318.20 in expenses. Mishcon's cross-motion is GRANTED, and Niro's interest in the '552 Patent is hereby declared extinguished. Mishcon's request for attorney's fees and costs, however, is DENIED.

The Clerk of Court is directed to terminate Docket Nos. 144, 146, 148, and 150.

SO ORDERED.

Dated: February 20, 2014
New York, New York

                                          JESSE M. FURMAN
                                          United States District Judge